UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PHL VARIABLE INSURANCE COMPANY,

               Plaintiff,

       -against-

TOWN OF OYSTER BAY,

              Defendant.

Civil Action No. 2:16-cv-04013

---

**TOWN OF OYSTER BAY'S MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

QUINN EMANUEL URQUHART
 & SULLIVAN LLP
51 Madison Avenue
New York, New York 10010
212-849-7000 (tel)
212-849-7100 (fax)

*Attorneys for Town of Oyster Bay*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND .....................................................................................4

     A.     The Unauthorized Amendment Was Entered Into Without Town Board
             Approval And In Violation Of The New York State Constitution .........................4

     B.     Phoenix Seeks To Enforce An Unauthorized And Unconstitutional
             Agreement While Conceding A Lack Of Due Diligence And
             Simultaneously Suing Its Counsel For Malpractice................................................7

ARGUMENT ............................................................................................................9

I.     PHOENIX'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED
     WITH PREJUDICE .............................................................................................10

     A.     The Unauthorized Amendment Is Unenforceable Against The Town
             Because It Was Not Approved By The Town Board...............................................10

     B.     The Unauthorized Amendment Is Unenforceable Against The Town
             Because It Is Unconstitutional ................................................................................12

II.    PHOENIX'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED
     WITH PREJUDICE .............................................................................................14

III.   PHOENIX'S TORT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............16

     A.     Phoenix's Tort Claims Attempt An Impermissible End-Run Around The
             State Constitution And Town Law And The Complaint Does Not Allege
             That Harris Beach, Mei, Or Genova Was Authorized To Bind The Town ..........17

     B.     Phoenix's Tort Claims Fail To State A Claim Against The Town ........................18

     C.     Phoenix's Tort Claims Are Time-Barred................................................................24

CONCLUSION........................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### Cases

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................9

*Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*,
   57 F.3d 146 (2d Cir. 1995)..............................................................................22

*Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC*,
   16 A.D.3d 680 (2d Dept. 2016) .......................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................9

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006)............................................................................14

*Bordeleau v. State of N.Y.*,
   18 N.Y.3d 305 (2011) ....................................................................................12

*Campbell v. City of New York*,
   4 N.Y.3d 200 (2005) ......................................................................................24

*City of New York. v. City Merch., Inc.*,
   211 F. App'x 44 (2d Cir. 2007) ..................................................................11, 12

*City of Zanesville v. Mohawk Data Sciences Corp.*,
   97 A.D.2d 64 (4th Dept. 1983) ..................................................................11, 12

*Clark v. Ravikumar*,
   90 A.D.3d 971 (2d Dept. 2011) .......................................................................25

*Clarke-St. John v. City of New York*,
   2016 WL 4263032 (Sup. Ct. Kings Cty. Aug. 4, 2016) ......................................25

*Cohen v. BMW Investments L.P.*,
   2016 WL 4499748 (2d Cir. Aug. 26, 2016)........................................................15

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006).............................................................................18

*Crowley Marine Assocs. v. Nyconn Assocs., L.P.*,
   292 A.D.2d 334 (2d Dept. 2002) ......................................................................21

*Daly v. Kochanowicz*,
    67 A.D.3d 78 (2d Dept. 2009) ...................................................................19

*Dour v. Vill. of Port Jefferson*,
    390 N.Y.S.2d 965 (Sup. Ct. Suffolk Cty. 1976) ....................................21

*E. End Cement & Stone, Inc. v. Carnevale*,
    73 A.D.3d 974 (2d Dept. 2010) .................................................................19

*Fandy Corp. v. Lung-Fong Chen*,
    262 A.D.2d 352 (2d Dept. 1999) ...............................................................25

*Friedman v. Anderson*,
    23 A.D.3d 163 (1st Dept. 2005).................................................................20

*Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*,
    593 F. Supp. 743 (S.D.N.Y. 1984) .....................................................13, 18

*Georgia Malone & Co., Inc. v. Rieder*,
    19 N.Y.3d 511 (2012) .........................................................................15, 16

*Glob. Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.*,
    2007 WL 174094 (W.D.N.Y. Jan. 22, 2007)............................................22

*Gorman v. Fowkes*,
    97 A.D.3d 726 (2d Dept. 2012) .................................................................21

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
    748 F.2d 729 (2d Cir. 1984) ......................................................................19

*Harbinger Capital Partners LLC v. Deere & Co.*,
    632 F. App'x 653 (2d Cir. 2015) ...............................................................23

*Harte v. Ocwen Fin. Corp.*,
    2016 WL 3647687 (E.D.N.Y. July 1, 2016) .............................................10

*Hous. Works, Inc. v. Turner*,
    179 F. Supp. 2d 177 (S.D.N.Y. 2001), *aff'd*, 56 F. App'x 530 (2d Cir. 2003)................14, 15

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000)...........................................................................23

*IKB Int'l S.A. v. Bank of Am. Corp.*,
    584 F. App'x 26 (2d Cir. 2014) ...........................................................18, 24

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000).......................................................................16

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    478 F. App'x 679 (2d Cir. 2012) ...............................................................23

*Losquadro v. Gerrard*,
    276 A.D.2d 599 (2d Dept. 2000) .........................................................23, 24

iii

*Mackinder v. Schawk, Inc.*,
    2005 WL 1832385 (S.D.N.Y. Aug. 2, 2005) ..................................................22

*MAFG Art Fund, LLC v. Gagosian*,
    123 A.D.3d 458 (1st Dept. 2014)..................................................................20

*Mans Const. Oversite, Ltd. v. City of Peekskill*,
    114 A.D.3d 911 (2d Dept. 2014) ..................................................................13

*Marine Midland Trust Co. of S. New York v. Vill. of Waverly*,
    248 N.Y.S.2d 729 (Sup. Ct. Broome Cty. 1963), *aff'd*, 21 A.D.2d 753 (3d Dept. 1964) .......13

*Merrick Gables Ass'n, Inc. v. Town of Hempstead*,
    691 F. Supp. 2d 355 (E.D.N.Y. 2010) ...............................................11, 19, 20

*Michael R. Gianatasio, PE, P.C. v. City of New York*,
    2016 WL 4522061 (Sup. Ct. N.Y. Cty. Aug. 26, 2016) ......................................20

*Morrison v. Hoffmann-La Roche, Inc.*,
    2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016) .................................................23

*MP Cool Investments Ltd. v. Forkosh*,
    2016 WL 4543494 (1st Dept. Sept. 1, 2016) ..................................................20

*Nevins Realty Corp. v. State of N.Y.*,
    240 A.D.2d 480 (2d Dept. 1997) ..................................................................15

*Okie v. Vill. of Hamburg*,
    196 A.D.2d 228 (4th Dept. 1994) .................................................................25

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)..........................................................................10

*Papasan v. Allain*,
    478 U.S. 265 (1986)......................................................................................9

*Parsa v. State of N.Y.*,
    64 N.Y.2d 143 (1984) ..................................................................................12

*People v. Ohrenstein*,
    77 N.Y.2d 38 (1990) ....................................................................................12

*People v. Westchester Cty. Nat. Bank of Peekskill*,
    231 N.Y. 465 (1921) ....................................................................................12

*Porcaro v. Town of Beekman*,
    15 A.D.3d 377 (2d Dept. 2005) ...................................................................25

*Robinowitz v. City of White Plains*,
    245 A.D. 736 (2d Dept. 1935), *aff'd*, 269 N.Y. 670 (1936) ...................................18

*Seif v. City of Long Beach*,
    286 N.Y. 382 (1941) ..............................................................................13, 15

iv

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)................................................................9, 10

*Steiner Egg Noodle Co. v. City of New York*,
   311 N.Y.S.2d 406 (1st Dept. 1969) ...............................................17

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
   450 F. App'x 32 (2d Cir. 2011) ....................................................24

*Union Free Sch. Dist. No. 3 of Town of Rye v. Town of Rye*,
   280 N.Y. 469 (1939) .......................................................................13

*UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*,
   288  A.D.2d 87 (1st Dept. 2001)....................................................24

*Verifacts Group, Inc. v. Town of Babylon*,
   267 A.D.2d 379 (2d Dept. 1999) ...................................................10

*Vertex Const. Corp. v. T.F.J. Fitness L.L.C.*,
   2011 WL 5884209 (E.D.N.Y. Nov. 23, 2011) ...............................16

*Wein v. State of N.Y.*,
   39 N.Y.2d 136 (1976) .....................................................................12

*Whitman Realty Grp., Inc. v. Galano*,
   41 A.D.3d 590 (2d Dept. 2007) .....................................................15

## Rules and Regulations

Federal Rule of Civil Procedure 12(b)(6) ...............................................1, 9, 19, 22

Federal Rule of Civil Procedure 9(b)......................................................18

## Statutes

N.Y. Gen. Mun. Law § 50-i ................................................................3, 24

N.Y. State Const. Art. VII § 1..............................................................12

N.Y. State Const. Art. VIII § 1 .......................................................2, 4, 12, 13

N.Y. Town Law § 64(6).......................................................................1, 10, 12

## Other Authorities

N.Y. Jur. 2d Counties, Etc. § 1405 ....................................................10, 11

N.Y. Jur. 2d Fraud and Deceit § 147 ................................................22

Defendant Town of Oyster Bay (the "Town") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint (the "Complaint" or "Cmplt.") pursuant to Federal Rule of Civil Procedure 12(b)(6) based on plaintiff PHL Variable Insurance Company's ("Phoenix") failure to state a claim.

## PRELIMINARY STATEMENT

By this action, Phoenix seeks *first* to enforce a guarantee agreement against the Town that was never authorized by the Town Board as required by New York statute and, in any event, is unenforceable because it violates the New York State Constitution, and *second* to hold the Town liable for certain claimed misrepresentations concerning the validity of the guarantee that were variously made by individuals without authority to speak for the Town and, in any event, were based upon easily verifiable public information.

The guarantee at issue related to a concession agreement between the Town and SRB Catering Corp. ("SRB") whereby SRB was licensed to provide food and catering services at the Town's "Woodlands Golf Course" property in return for SRB paying license fees to the Town and making certain improvements to the facility.  In 2012, Phoenix agreed—without conducting any serious due diligence—to extend a $7.8 million loan to SRB purportedly to finance those promised improvements.  In connection with that loan, SRB claimed to have procured the Town's agreement to guarantee its debt obligations to Phoenix.  The guarantee, however, is not enforceable against the Town and all of Phoenix's claims should be dismissed with prejudice.

*First*, Phoenix does not and cannot allege a foundational element of its breach of contract claims (Counts I and II), namely the formation of a contract.  Under section 64(6) of the New York Town Law, a town cannot enter into a contract unless that contract is first approved by resolution of the town board.  This rule is clear and strictly enforced: if there is no town board approval, no contract has been formed.  Here, there is not a single allegation that the Town's

1

alleged guarantee of SRB's debt obligations was ever publicly presented to or approved by the Town Board.  And Phoenix cannot make such an allegation because the guarantee was never brought to the Town Board's attention.  This complete absence of Town Board approval precludes Phoenix's breach of contract claims.  *See infra* § I.A.  Phoenix's breach of contract claims should be dismissed with prejudice on this basis alone.

*Second*, even if the guarantee had been approved by the Town Board, it would still not be enforceable because it violates the New York State Constitution.  Under Article VIII of the State Constitution, municipalities are prohibited from issuing guarantees of private debt.  Like the rule requiring town board approval of contracts, courts strictly apply Article VIII and will void town guarantees regardless of the circumstances in which they were entered.  There is no exception to this rule. Phoenix simply cannot recover against the Town on the basis of an unconstitutional agreement.  *See infra* § I.B. Its breach of contract claims should be dismissed for this reason, too.

*Third*, Phoenix's claim against the Town for unjust enrichment (Count III) should also be dismissed with prejudice.  As an initial matter, the unjust enrichment claim seeks the same damages as the contract claims and is thus nothing more than an attempted end-run around the New York Town Law and State Constitution; Phoenix cannot recover on an invalid and unconstitutional contract merely by repackaging its contract claims under a theory of unjust enrichment.  To hold otherwise would render the protections afforded to the public by the Town Law and State Constitution worthless.  The law is therefore clear that a quasi-contract theory cannot be a basis for recovery when the alleged agreement flouts public policy or legal restrictions on the powers of a town.  Moreover, Phoenix also cannot allege essential elements of its claim, including that any enrichment would be unjust.  New York law charges Phoenix with knowing the rules applicable to its business dealings.  As a result, even if Phoenix's loan to SRB

did benefit the Town, Phoenix made that loan knowing full well that without Town Board approval the Town was not bound by the agreement and the guarantee was, in any event, unconstitutional and therefore unenforceable against the Town.  *See infra* § II.

*Finally*, Phoenix's tort claims should be dismissed because they fail to state a claim against the Town and are barred by the applicable statute of limitations.  Specifically, Phoenix's fraud claims (Counts VIII, IX and XII) fail to state a claim because they do not allege either the Town's fraudulent intent or justifiable reliance by Phoenix; its innocent misrepresentation claims (Counts IV, V and X) also fail to allege justifiable reliance and Phoenix does not seek rescission of the contract; and its negligent misrepresentation claims (Counts VI, VII and XI) fail because the Complaint is devoid of allegations of the "special relationship" between Phoenix and the Town that could give rise to such a claim.  In addition, all nine of the tort claims were filed more than one year and ninety days after the "happening of the event upon which the claim is based" and are, therefore, barred by the statute of limitations applicable to tort claims filed against a municipality as set forth in New York General Municipal Law § 50-i.  *See infra* § III.

*        *        *

If there is any victim in this case, it is the Town.[1]  Should this action proceed, Town officials would testify that they did not learn of the purported guarantee's existence until well after its supposed execution.  In other words, there could be no Town Board approval of the guarantee because the Town did not learn of it until long after the fact.  This background is not necessary to decide this Motion, however; rather, this Motion can and should be granted based on the facially insufficient allegations in the Complaint and such facts as the Court may take

---

[1]     The transaction at issue here relates to one of several concessions that Harendra Singh ("Singh") obtained from the Town.  Singh is currently the subject of a federal criminal indictment brought by the U.S. Attorney for the Eastern District of New York alleging that he bribed a Town official to falsify loan documents, including those at issue here.  *See United States. v. Singh*, Case No. 2:15-cr-00450-SJF-AKT (E.D.N.Y.).

judicial notice of.  As Phoenix's allegations cannot state a claim against the Town, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

**A.     The Unauthorized Amendment Was Entered Into Without Town Board Approval And In Violation Of The New York State Constitution**

The Town of Oyster Bay owns various public facilities that provide food and beverage services to residents and visitors.  *See* Cmplt. ¶ 6.  The Town does not operate these facilities itself but rather contracts with private vendors through "concession" agreements that license the vendor to operate the facilities for a fixed period of time in exchange for paying fees to the Town.  Under New York law, these concession agreements, like all contracts, must be presented to and approved by the Town Board.  Vendors may seek out private financing; they cannot rely on the Town in doing so, however, as Article VIII of the New York State Constitution prohibits municipalities from guaranteeing or paying such debts.

This case relates to the financing of the restaurant and catering facilities at the Town's Woodlands golf course (the "Facilities").  *See* Cmplt. ¶¶ 8-9.  The concession was awarded to SRB in 2000.[2]  The concession agreement between the Town and SRB, dated October 30, 2000 (the "2000 Concession Agreement"), permitted SRB to provide catering and other services at the Facilities for a twenty-year term commencing on January 1, 2001 in return for SRB paying the Town a license fee,  *id*. ¶¶ 13-14; SRB also agreed to make over $2 million in improvements to the Facility, *id.* ¶ 16.  On April 19, 2005, the Town and SRB entered into an amendment to the

---

[2]     Since 2005, Singh has also provided concession services at the Town's "TOBAY Beach" facilities through another entity, SRB Concession, Inc. ("SRB Concession").  In addition to the loan at issue here, an affiliate of Phoenix, Phoenix Life Insurance Company ("Phoenix Life"), extended a loan of $12,273,748.80 to SRB Concession, which was also purportedly subject to a Town guarantee.  Phoenix Life has sued the Town in Nassau County Supreme Court seeking to enforce that purported guarantee, among other things.  *See* Declaration of Jon Pickhardt (the "Pickhardt Decl.") Ex. A (Second Amended Complaint, *Phoenix Life Ins. Co. v. Town of Oyster Bay*, Index No. 605451/2016 (Sup. Ct. Nassau Cty., Aug. 30, 2016)).

2005 Concession Agreement (the "2005 Amendment").  *Id.* at ¶ 17.   The 2005 Amendment stated that SRB had "presented paid invoices to the Town indicating that the [capital improvement] project cost to date [was] $4,462,715.00" and extended the term of the 2000 Concession Agreement for twenty years.  *Id.* ¶ 18; *id.* Ex. B (2005 Amendment).  On September 16, 2008, the Town and SRB entered into another amendment (the "2008 Amendment") pursuant to which SRB agreed to make an additional $3.25 million of capital improvements.  *Id.* ¶ 21; *id.* Ex. C (2008 Amendment), Preamble.  In compliance with New York law, the 2000 Concession Agreement, 2005 Amendment, and 2008 Amendment were authorized by resolutions adopted by the Town Board on or around the time of each document's execution.[3]

Supposedly to finance the additional $3.25 million of required capital improvements to the Facility, Singh and SRB obtained a loan in the amount of $7,843,138.08 (the "Loan"), in November 2011 from non-party loan broker NDH Capital Corporation ("NDH").  Cmplt. ¶¶ 22-23, 29.  NDH subsequently assigned its interest in the Loan to Phoenix.  *Id.* ¶ 24.  Under the Loan Documents SRB was required to make monthly interest payments to Phoenix beginning on September 22, 2012.  *See* Cmplt. Ex. D (Term Loan, Pledge and Security Agreement), ¶ 2(c).[4] The Loan became fully due and payable if SRB missed any of these monthly installments.  *See id.* Ex. D (Term Loan Agreement), ¶¶ 9-10 (describing events of default and remedies).

---

[3]   The 2000 Concession Agreement was authorized by Town Board Resolution No. 638-2000, adopted on October 3, 2000; the 2005 Amendment was authorized by Town Board Resolution No. 313-2005, adopted on April 19, 2005; and the 2008 Amendment was authorized by Town Board Resolution No. 889-2008, adopted on September 16, 2008.   The Court can take judicial notice of town board resolutions as well as their absence.  *See, e.g., Lewis v. Livingston Cty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 203 (W.D.N.Y. 2014) (taking judicial notice of county resolution on a motion to dismiss); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691–92 (S.D.N.Y. 2011) ("The Court may also take judicial notice of village and town maps, resolutions, and declarations.").

[4]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

Despite the Loan having been made entirely for the benefit of SRB so that SRB could satisfy *its* obligation to the Town, the Loan Documents also purported to obligate the Town as a guarantor.  That guarantee was memorialized in a purported new amendment to the Concession Agreement, dated November 18, 2011 (the "Unauthorized Amendment"), that the Complaint alleges was executed by Town Attorney Leonard Genova.  Cmplt. ¶ 31.[5]  The Unauthorized Amendment included a cross-default provision pursuant to which the Town would remit a "Termination Payment" to Phoenix that included amounts "due or to become due under the Loan Documents" in the event of a default by SRB, and such amounts were not subject to set-off for amounts due to the Town by SRB.  *See* Cmplt. ¶ 32; *id.* Ex. F (Unauthorized Amendment), ¶ 3.

The Complaint alleges that the Town was represented by Harris Beach, PLLC ("Harris Beach") and deputy Town attorney Frederick Mei ("Mei") in connection with the negotiation of the Loan, Cmplt. ¶ 36 (at 13), and that both lawyers provided opinion letters in connection with the Loan transaction, *id.* ¶¶ 37 (at 13).[6]  The Harris Beach Letter, dated November 16, 2011, opined, *inter alia*, that the Town had "the power and authority to conduct the business" described in the Unauthorized Amendment and that the Unauthorized Amendment was "duly authorized by all necessary action of [the Town]" and created "valid binding obligations" on the Town.  *Id.* ¶ 38 (at 13); *see also id.* Ex. I (Harris Beach Letter).  The Mei Letter, dated November 18, 2011, set forth the same opinions and also the opinion that "payments to be made by [the Town] under the [Unauthorized Amendment] are not subject to any conditions precedent to funding and are

---

[5]    Apparently due to a formatting error, all Complaint paragraphs after ¶ 34 are numbered incorrectly.  For ease of reference, this Memorandum of Law will refer to all such paragraphs by the paragraph number appearing in the Complaint and include the relevant page number in parentheses.

[6]    The SAC does not allege that the purported retention of Harris Beach was authorized by a Town Board resolution as would be required to create such an engagement.  As noted above, *see* note 3, *supra*, this Court can take judicial notice of the absence of such a resolution.  Discovery in this case also would show that, like the Unauthorized Amendment, the purported engagement of Harris Beach was never disclosed by Mei to the Town Board or the Town's executives.

not subject to any off-sets, reductions or defenses to satisfy [the Town's] obligations." Cmplt. ¶ 38 (at 15-16); *see also id.* Ex. K (Mei Letter). The Complaint does not allege that the Unauthorized Amendment was ever presented to or approved by the Town Board.

**B.     Phoenix Seeks To Enforce An Unauthorized And Unconstitutional Agreement While Conceding A Lack Of Due Diligence And Simultaneously Suing Its Counsel For Malpractice**

Phoenix provided a Notice of Claim to the Town on June 22, 2015. On July 12, 2016, the Town conducted an examination of Phoenix as permitted by Section 50-h of the New York General Municipal Law. The Phoenix witness, Nelson Correa, was the primary business contact at Phoenix for the SRB loan. *See* Pickhardt Decl. Ex B (Transcript of Examination of N. Correa ("Correa Tr.")) at 17:13-15. During the examination, Correa conceded that Phoenix had not followed standard due diligence procedures in extending the loan because it had been counting on the Town to act as a "backstop" on the loan, which he considered from a business perspective to be indistinguishable from a guarantee. *Id.* at 40:18-41:10; *id.* at 26:3-9. For example, Phoenix did not require any explanation why SRB was borrowing $7.8 million when it was only required to complete $3.25 million in improvements. *Id.* at 73:20-74:10. Phoenix also did not obtain any plans or budgets to confirm what purported improvements were to be made with the loan. *Id.* at 61:11-62:3. Phoenix also extended the loan in a lump sum at closing rather than, as is standard in construction contexts, with periodic payments being released upon SRB meeting construction milestones. *Id.* at 52:11-53:15. In addition, though Phoenix contends it was relying upon a guarantee from the Town, it never met with any Town executives and only spoke with a single Town employee, Fred Mei.[7] *Id.* at 35:5-9. Moreover, Phoenix did not retain New York counsel to advise it on New York municipal law requirements. *Id.* at 18:5-16.

---

[7]     The Singh indictment alleged that he made cash payments to Mei in exchange for Mei's assistance in obtaining the loans from Phoenix.

On July 19, 2016, Phoenix filed its initial Complaint against the Town; it filed an Amended Complaint on July 27, 2016. In the Complaint, Phoenix asserts twelve claims against the Town, including for: Breach of Contract (Counts I and II); Unjust Enrichment (Count III); Innocent Misrepresentation, Negligent Misrepresentation and Fraud based on the actions of Harris Beach (Counts IV, VI and VIII); Intentional Misrepresentation, Negligent Misrepresentation and Fraud based on the actions of Fred Mei (Counts V, VII and IX); and Innocent Misrepresentation, Negligent Misrepresentation and Fraud based on the actions of Leonard Genova (Counts X, XI and XII). Counts I and IV-XII seek damages of approximately $6.252 million, or the full amount due and outstanding under the Loan Documents. Count III seeks reimbursement "for any improvements to the Facilities made by SRB with Phoenix funds." Count II does not set forth a requested damages amount.[8]

On August 3, 2016, Phoenix and PHL filed suit in Connecticut Superior Court against a number of parties including McCarter & English LLP ("McCarter"), the Connecticut counsel that advised them in connection with the SRB loans. *See* Pickhardt Decl. Ex. C (Complaint, *PHL Variable Ins. Co. and Phoenix Life Ins. Co. v. McCarter & English LLP, et al*, No. HHD-CV-16-6070473S (Hartford Super. Ct. Aug. 3, 2016)). In that action, Phoenix conceded that the Unauthorized Amendment had been intentionally structured to include a guarantee by the Town such that, upon a default by SRB, the Town would "make a 'Termination Payment' to Phoenix" that "would, in effect, make Phoenix whole because it was specifically formulated to equal the amounts outstanding under the Beach Loan." Pickhardt Decl. Ex. C (Hartford Complaint) at ¶¶ 71-72. As Phoenix explained, its goal when entering into the transaction was to ensure that the

---

[8]    Phoenix Life filed suit against the Town contemporaneously in state court asserting parallel claims in connection with the loan to SRB Concession. *See* Pickhardt Decl. Ex. A (Nassau Cty. Second Amended Complaint).

Town "was obligated absolutely and unconditionally to make Phoenix whole if SRB Catering failed to perform its obligations to [Phoenix]." *Id.* at ¶ 39. The complaint then brings malpractice claims against McCarter for, *inter alia*, failing to research and investigate "New York law to determine that [the Town] could assert a defense of illegality and unenforceability of the SRB Loans as they related to [the Town's] obligations," "whether the SRB Loans were properly and lawfully authorized by the appropriate [Town] boards, bodies or officials," and "constitutional provisions, statutory provisions and common law legal precedent involving obligations of a New York municipal corporation … to incur and to pay debts and obligations, including debts and obligations of other parties." *Id.* at ¶ 105.

## ARGUMENT

The Complaint fails to state any valid cause of action and should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a claim must be dismissed if it fails to allege "sufficient factual matter" that, if accepted as true, "'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only if the "factual allegations [are] sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Although the Court must accept all well-pleaded factual allegations as true, that tenet is "inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. The Court is also "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d

Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (quotation marks and citation omitted).

## I.     PHOENIX'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

In Count I, Phoenix claims that the Town has breached the Unauthorized Amendment because it "failed and/or refused to remit the Termination Payment to Phoenix." Cmplt. ¶ 37 (at 11). In Count II, Phoenix claims that the Town has breached the Unauthorized Amendment because it "failed to remit the Cause Termination Payment to Phoenix." *Id.* ¶ 37 (at 12). Both Counts should be dismissed with prejudice because the Unauthorized Amendment is not enforceable against the Town for two independent reasons: (i) it was never approved by the Town Board and thus is invalid and unenforceable under New York law; and (ii) it violates the New York State Constitution's prohibition against municipal guarantees of private debt.

### A.     The Unauthorized Amendment Is Unenforceable Against The Town Because It Was Not Approved By The Town Board

It is axiomatic that to bring a breach of contract claim, a plaintiff must demonstrate "the formation of a contract between the parties." *Harte v. Ocwen Fin. Corp.*, 2016 WL 3647687, at *3 (E.D.N.Y. July 1, 2016) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)). In the case of towns, New York Town Law provides that no contract is formed unless that agreement is authorized and approval by the town board. *See* N.Y. Town Law § 64 (concerning the "[g]eneral powers of town boards"). In particular, section 64(6) of the New York Town Law requires that "contracts for any of the purposes authorized by law … shall be executed … after approval by the town board." *Id.* New York courts have interpreted this to mean that "a formal resolution [must] be passed by the Town Board … before a Town can be bound by any contract." *Verifacts Group, Inc. v. Town of Babylon*, 267 A.D.2d 379, 379 (2d Dept. 1999). "Absent strict compliance" with section 64(6), there is "no valid contract binding a town." *Id.*; *see also* 27

N.Y. Jur. 2d Counties, Etc. § 1405 (New York municipal corporations are not bound by contracts made by an officer or employee who "had no authority to enter into such a contract on behalf of the corporation").  This rule's rationale is straightforward: as contracts can be costly to taxpayers, they must be approved publicly and at the highest level to bind the town.  *See City of Zanesville v. Mohawk Data Sciences Corp.*, 97 A.D.2d 64, 67 (4th Dept. 1983) ("Common sense dictates [strict compliance with approval rules] since statutory requirements could otherwise be nullified … to the detriment of the taxpaying public ….").

Here, the Complaint does not contain a single allegation that the Unauthorized Amendment was presented to the Town Board or approved by a Town Board resolution.  Nor was there in fact any such resolution.  This fact is fatal to Phoenix's breach of contract claims because, without Town Board approval, Phoenix cannot show the formation of a contract with the Town.  And, since there was no contract, the Town has no contractual obligations to Phoenix.  Phoenix's breach of contract claims should be dismissed with prejudice on this basis alone.  *See Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 363 (E.D.N.Y. 2010) (dismissing breach of contract claim where the purported agreement was not duly approved or ratified by the town).

There is nothing inequitable about this result.  Phoenix is a sophisticated party with the resources and ability to understand the laws governing contracts with towns; the Loan was originated by a similarly sophisticated loan agent; and both Phoenix and NDH were represented by counsel.  *See* Cmplt. ¶ 24, 28.[9]  Even if that were not the case, a party contracting with a government entity in New York is "chargeable with knowledge of the statutes which regulate [its counterparty's] contracting powers and is bound by them."  *City of New York. v. City Merch.,*

---

[9]  To the extent that Phoenix was not properly advised by its counsel in respect of the legal obligations governing the SRB loan, it has initiated a legal action against McCarter for malpractice.

*Inc.*, 211 F. App'x 44, 45 (2d Cir. 2007) (citing *Parsa v. State of N.Y.*, 64 N.Y.2d 143, 147 (1984)); *see also City of Zanesville*, 97 A.D.2d at 66-67 (those dealing with municipal corporations must "at their peril see to it" that their counterparties are acting within their authority).  Indeed, Phoenix has effectively already conceded that it failed to conduct standard due diligence, which would have informed it that an analogous resolution was never approved for the Unauthorized Amendment.  No doubt Town Law section 64(6) is strictly enforced for these reasons as well.

### B.     The Unauthorized Amendment Is Unenforceable Against The Town Because It Is Unconstitutional

Phoenix's breach of contract claims should also be dismissed for the independent reason that the guarantee purportedly incorporated into the contract violates the New York State Constitution and is therefore unenforceable.  In particular, Article VIII of the State Constitution prohibits a municipality from making loans or guaranteeing the debt of others.  It provides that:

> No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking … nor shall any county, city, town, village or school district give or loan its credit to or in aid of any individual, or public or private corporation or association, or private undertaking ….

N.Y. State Const. Art. VIII § 1.[10]

---

[10]    Article VIII, section 1 is "the local analogue" to Article VII, section 8(1), which prohibits the State government from giving or loaning money to private recipients or giving or loaning their credit to private or public corporations.  *See Bordeleau v. State of N.Y.*, 18 N.Y.3d 305, 317 n.3 (2011).

As the New York Court of Appeals has explained, the State Constitution's prohibition on the loan of public credit to private corporations originated in 1846 as a response to the State's practice of subsidizing private railroad and canal companies through long-term State debt obligations.  *See id.* at 313-14.  While subsidizing the companies' debt initially "seemed very much in the public interest," *Wein v. State of N.Y.*, 39 N.Y.2d 136, 143 (1976), it soon "produced a fiscal crisis … when these companies failed during the Depression of 1837–1842." *People v. Ohrenstein*, 77 N.Y.2d 38, 50 (1990) (internal quotation and citation omitted); *see also People v. Westchester Cty. Nat. Bank of Peekskill*, 231 N.Y. 465, 474 (1921) (prohibitions on loan of public credit "represent[s] the triumph of efforts to prevent improvidence, to make useless any pressure from special interests, to safeguard the credit of the state, and the interests of the people as a whole").  The ban on such practices was, therefore, necessary to prevent the breakdown of

12

The New York Court of Appeals has long made clear that, like the New York Town Law, Article VIII is to be strictly applied and "rigidly enforced according to its letter and its spirit." *Union Free Sch. Dist. No. 3 of Town of Rye v. Town of Rye*, 280 N.Y. 469, 480 (1939). As a result, *any* agreement by a municipality to guarantee the debt of a private entity is unconstitutional and cannot stand. *See Marine Midland Trust Co. of S. New York v. Vill. of Waverly*, 248 N.Y.S.2d 729, 732 (Sup. Ct. Broome Cty. 1963) ("Article VIII of the New York Constitution and the provisions of the Local Finance Law are part of the effort to create and maintain fiscal integrity. To allow the agreement in question to stand would be a clear evasion of the Constitution and statutes of this State."), *aff'd*, 21 A.D.2d 753 (3d Dept. 1964). This strict application of the State Constitution is no different than courts' strict compliance with local laws in determining the validity of municipal contracts. *See, e.g.*, *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 749 (S.D.N.Y. 1984) ("Public accountability requires that restrictions on the persons authorized to enter into municipal contracts be rigidly enforced."); *Seif v. City of Long Beach*, 286 N.Y. 382, 389 (1941) (finding no liability where statutory requirements were not satisfied); *Mans Const. Oversite, Ltd. v. City of Peekskill*, 114 A.D.3d 911, 911-12 (2d Dept. 2014) (finding town contract unenforceable as it did not comply with local regulations).

For this reason, the Unauthorized Amendment is unenforceable against the Town and any attempt by Phoenix to recover from the Town is impermissible. It does not matter that contemplated payments to Phoenix are referred to as a "Termination Payment." Regardless of nomenclature, the contemplated payment has all the hallmarks of a guarantee: the Town's obligations are tied entirely to amounts owed by another, without any required connection to a

---

"[t]he entire machinery of local government … if the credit of the units of local government required to carry out their governmental functions is impaired." *Town of Rye*, 280 N.Y. at 474.

public purpose or benefit to the Town; the Town purports to waive all defenses; and the Town's purported obligations to Phoenix are not subject to set off for amounts owed to the Town by SRB. *See* Cmplt. ¶ 34; *see also* Cmplt. Ex. F (Unauthorized Amendment). Indeed, Phoenix admits as much, alleging that the transaction was structured to "assure that Phoenix would receive significant monies from [the Town] in the event that SRB defaulted…." Cmplt. ¶ 27. Indeed, as Phoenix concedes in its malpractice action against McCarter, the Town's payment "was specifically formulated to equal the amounts outstanding under the Golf Course Loan" such that the Town "was obligated … to make Phoenix whole if SRB Catering failed to perform its obligations to PHL." Pickhardt Decl. Ex. C (Hartford Complaint) ¶¶ 47, 39. As the payment sought by Phoenix's breach of contract claims is, in fact, an unconstitutional guarantee by the Town of SRB's debts, there is no enforceable contract against the Town, and Phoenix's contract claims should be dismissed with prejudice.

## II.    PHOENIX'S UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED WITH PREJUDICE

In Count III, Phoenix alleges that the Town would be unjustly enriched if it is not required to pay the outstanding amount of SRB's debt to Phoenix. Cmplt. ¶¶ 35-37 (at 12). To recover on an unjust enrichment theory, a plaintiff must show: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). Phoenix's allegations fall far short of this standard.

As an initial matter, Phoenix cannot recover against the Town on this claim because the same New York Town Law and State Constitution restrictions that preclude the contract claims also preclude Phoenix from recovering on an alternative theory of unjust enrichment. *See Hous. Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 213 (S.D.N.Y. 2001), *aff'd*, 56 F. App'x 530 (2d Cir.

2003) (acknowledging New York's "general prohibition of unjust enrichment claims against municipalities"); *see also Seif*, 286 N.Y. at 387-88 ("[T]his court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions."); *Nevins Realty Corp. v. State of N.Y.*, 240 A.D.2d 480, 480 (2d Dept. 1997) (recovery on an unjust enrichment theory is not appropriate where independent approval by the State Comptroller was required by state law but not obtained). If the opposite were true, then the protections of local law and the State Constitution could easily be circumvented by dressing up a contract claim as one for unjust enrichment.

Second, there is nothing unjust about any alleged enrichment to the Town. Again, the rules that make the Unauthorized Amendment unenforceable as to the Town were no secret— one is found in the State Constitution itself—and Phoenix is charged with knowledge of these restrictions. Phoenix effectively concedes as much by suing McCarter for malpractice for having "failed to research and investigate constitutional provisions, statutory provisions and common law legal precedent" on Phoenix's behalf. *See* Pickhardt Decl. Ex. C (Hartford Cmplt.) ¶ 105. That Phoenix entered into the agreement nonetheless means that any harm it suffered due to the agreement's invalidity is its own fault (or that of its counsel, from whom it is seeking recovery).

Phoenix similarly fails to allege the kind of direct benefit to the Town *at Phoenix's expense* that is required to sustain an unjust enrichment claim. An unjust enrichment claim, however, is "rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Cohen v. BMW Investments L.P.*, 2016 WL 4499748, at *1 (2d Cir. Aug. 26, 2016) (citing *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012)); *see also Whitman Realty Grp., Inc. v. Galano*, 41 A.D.3d 590, 592–93 (2d Dept. 2007) (plaintiff must establish that defendant "benefitted at its expense"). The Complaint alleges that

15

the Town was unjustly enriched "to the extent [Phoenix's] funds were utilized to improve and/or operate the Facilities."  Cmplt. at ¶ 35 (at 12).  But the 2008 Amendment required SRB to make $3.25 million of improvements, *see* Cmplt. ¶ 21, and the Complaint is devoid of allegations indicating that any additional improvements were made at all, let alone with funds from the Loan.  Without such allegations, Phoenix does not state an unjust enrichment claim.

Finally, Phoenix does not allege a relationship between it and the Town "that could have caused reliance or inducement," as required to plead an unjust enrichment claim.  *Georgia Malone*, 19 N.Y.3d at 517; *see also Vertex Const. Corp. v. T.F.J. Fitness L.L.C.*, 2011 WL 5884209, at *5 (E.D.N.Y. Nov. 23, 2011) (an unjust enrichment claim "will not be supported if the connection between the parties is too attenuated") (citation omitted).  The Complaint also fails to allege the kind of "specific and direct benefit" to the Town that the Second Circuit recognizes is "necessary to support an unjust enrichment claim" under New York law.  *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  Instead, it alleges merely that counsel for SRB, NDH, Phoenix and the Town "collaboratively created a vehicle whereby … [the Town] would be required to make a 'Termination Payment' to [Phoenix]."  Cmplt. ¶ 28.  Such a bare-boned allegation is insufficient to establish the kind of relationship between the Town and Phoenix that could give rise to an unjust enrichment claim.

## III.    PHOENIX'S TORT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

The Complaint alleges nine separate tort claims against the Town relating to representations allegedly made by Harris Beach, Fred Mei and Leonard Genova, respectively, in connection with the Unauthorized Amendment.  Counts IV and VI allege innocent and negligent misrepresentation, respectively, based on statements made by Harris Beach "on behalf of" the Town in the Harris Beach Letter, dated November 16, 2011, Cmplt. ¶¶ 35-44 (at 12-15) and 41-45 (at 17-18).  Counts V and VII allege innocent and negligent misrepresentation, respectively,

based on statements made by Mei "on behalf of" the Town in the Mei Letter, dated November 18, 2011.  Cmplt. ¶ 37-44 (at 15-17) and 41-45 (at 18-19).  Counts X and XI allege innocent and negligent misrepresentation, respectively, based on representations made in the Unauthorized Amendment signed by Genova, dated June 19, 2012.  Cmplt. ¶¶ 40-42 (at 23-24) and ¶¶ 40-43 (at 24).  Counts VIII and IX allege fraud based on statements in the Harris Beach Letter and Mei Letter, respectively, Cmplt. ¶¶ 41-47 (at 19-20) and 41-47 (at 21-22); Count XII alleges fraud based on representations in the Unauthorized Concession Agreement, Cmplt. ¶¶ 40-45 (at 25-26).  Even if Harris Beach, Mei and Genova did have the authority to speak for the Town, which the Complaint does not allege, none of Phoenix's tort claims states a claim against the Town and, in any event, all of them are barred by the statute of limitations set forth in New York General Municipal Law.  Counts IV through XII should, therefore, be dismissed with prejudice.

### A. Phoenix's Tort Claims Attempt An Impermissible End-Run Around The State Constitution And Town Law And The Complaint Does Not Allege That Harris Beach, Mei, Or Genova Was Authorized To Bind The Town

All of the tort claims asserted against the Town should be dismissed with prejudice as impermissible attempts to hold the Town liable for agreements purportedly entered into without Town Board authorization and in violation of the State Constitution.  Permitting such an end-run around the New York Town Law and the State Constitution is particularly inappropriate here as the Complaint is devoid of any allegation that any of Harris Beach, Mei, or Genova was duly authorized by the Town to make any representations to Phoenix (or NDH) on the Town's behalf.

As discussed above, however, it is a well-established principle of New York law that a party contracting with a municipality "relies on the self-asserted, naked representation of an official's power and authority to bind the municipality at [its] peril."  *Steiner Egg Noodle Co. v. City of New York*, 311 N.Y.S.2d 406, 409 (1st Dept. 1969) (reversing fraud judgment because the commissioner of public works did not have power to bind the city).  It is equally well-established

that municipal corporations are not liable for unauthorized statements or representations by individuals. *See Robinowitz v. City of White Plains*, 245 A.D. 736, 736 (2d Dept. 1935), *aff'd*, 269 N.Y. 670 (1936) (reversing denial of motion to dismiss fraud claim against a city because "[t]he alleged misrepresentations upon which the plaintiff says she relied are predicated upon the doing of acts beyond scope of the authority of the officials who, plaintiff claims, made them"); *see also Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 749 (S.D.N.Y. 1984) ("[P]lacing the public on notice of the limitation of the authority of municipal employees furthers the purpose of the statutory restrictions to protect the public against the irresponsible or corrupt actions of municipal employees").  Absent any allegation that either Harris Beach, Mei, or Genova was duly authorized to bind the Town in connection with the Unauthorized Amendment, the Complaint's tort claims do not state a claim against the Town.

### B.  Phoenix's Tort Claims Fail To State A Claim Against The Town

#### 1.  The Allegations In The Complaint Do Not State A Claim For Fraud

The elements of a cause of action for fraud under New York law are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir. 2006).  Fraud claims must be pleaded with particularity, which means the complaint must identify both the allegedly fraudulent statements and "why the statements … are fraudulent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (quotation omitted); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  And, the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *IKB Int'l*, 584 F. App'x

26 at 27 (quotation omitted).  As not one of Phoenix's fraud claims is able to meet this standard, Counts VIII, IX and XII should be dismissed under Rule 12(b) for failure to state a claim.

First, the Complaint does not adequately allege that any reliance by Phoenix was justified. To plead fraud under New York law, a plaintiff "must establish not only that he or she actually relied on the misrepresentation, but that this reliance was reasonable or justifiable." *Daly v. Kochanowicz*, 67 A.D.3d 78, 89 (2d Dept. 2009).  Where the information at issue does not concern matters "peculiarly within the [defendant's] knowledge," and plaintiff had "the means available of knowing, by the exercise of ordinary intelligence, the truth," plaintiff is required to have made use of those means, "or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *E. End Cement & Stone, Inc. v. Carnevale*, 73 A.D.3d 974, 975 (2d Dept. 2010); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984) (where sophisticated parties "enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance").

Phoenix is a sophisticated party that was represented by counsel in connection with this transaction.  Cmplt. ¶¶ 24, 28.  None of the statements complained of included information within the Town's sole knowledge; on the contrary, each one concerned easily verifiable, publicly available information.  Minimal due diligence by Phoenix or its counsel would have informed them of the requirements of the New York Town Law and the State Constitution, for example, or of the fact that a Town Board resolution analogous to those *expressly referenced* in the Unauthorized Amendment was required to bind the Town and had not been approved.  And Phoenix is charged with knowledge of the legal framework in which it was operating.  *See Merrick Gables*, 691 F. Supp. 2d at 363 (dismissing fraud claim because it was not reasonable

for plaintiffs to rely on a town's alleged representation that it would act in a manner prohibited by statute); *Michael R. Gianatasio, PE, P.C. v. City of New York*, 2016 WL 4522061 at \*10 (Sup. Ct. N.Y. Cty. Aug. 26, 2016) (plaintiff could not establish justifiable reliance on statements by the city because she "could have, and should have, been aware of the law").

Even if that was not the case, New York courts do not permit sophisticated plaintiffs to hide behind formulistic reliance allegations when they failed to take steps to learn information readily available to them. *See, e.g., MP Cool Investments Ltd. v. Forkosh*, 2016 WL 4543494, at \*1 (1st Dept. Sept. 1, 2016) ("[P]laintiff's allegations do not establish justifiable reliance as required to prove fraud because plaintiff is a sophisticated investor that had the means available to it to learn the true nature and real quality of the investment it made."); *MAFG Art Fund, LLC v. Gagosian*, 123 A.D.3d 458, 459 (1st Dept. 2014), *leave to appeal denied,* 25 N.Y.3d 901 (2015) ("[T]hese sophisticated plaintiffs cannot demonstrate reasonable reliance because they conducted no due diligence….").  This is especially the case here where Phoenix has elsewhere specifically alleged that its counsel was under a duty to inform Phoenix with respect to the very matters that it claims were the subject of the supposed misrepresentations by the Town.  If anything, this makes clear that Phoenix was relying on its lawyers—not the Town—to advise it, and Phoenix cannot now claim justifiable reliance on any statements allegedly made on the Town's behalf.

Second, the Complaint does not allege that the Town had any fraudulent intent.  To sufficiently allege fraudulent intent, Phoenix must allege that someone authorized to speak on behalf of the Town "knowingly uttered a false statement with the intention of depriving [Phoenix] of a specific benefit, thereby deceiving and damaging [it]." *Friedman v. Anderson*, 23 A.D.3d 163, 166 (1st Dept. 2005)*.  The Complaint does not allege that either Harris Beach or Mei was duly authorized to make any representations on the Town's behalf, however, and courts in this

state do not permit municipal corporations to be held liable for unauthorized statements or representations. *See, e.g., Dour v. Vill. of Port Jefferson*, 390 N.Y.S.2d 965, 970 (Sup. Ct. Suffolk Cty. 1976) ("[A] municipality is not liable for the unauthorized statements or representations made by such officers and/or employees regardless of position."). There is also no allegation that Genova signed the Unauthorized Amendment with the intent to defraud Phoenix. Similarly, the Complaint's allegation that the Town was "distinctly situated" to know whether the guarantee was authorized or enforceable, *see* Cmplt. ¶¶ 43 (at 19), 43 (at 21), 41 (at 25), is both too vague to allege fraudulent intent and also incorrect: the requirements of the New York Town Law and State Constitution, and records of Town Board resolutions, are in the public domain. Because the Complaint alleges neither justifiable reliance nor fraudulent intent, it does not state a claim for fraud and Counts VIII, IX and XII should be dismissed with prejudice under Rule 12(b) for failure to state a claim.[11]

> 2. <u>The Allegations In The Complaint Do Not State A Claim For Innocent Misrepresentation</u>

The Complaint alleges three innocent misrepresentation claims. Each one alleges that "[t]o the extent [the Town] is correct" that the Loan was not authorized by a Town Board resolution and the guarantee is unenforceable under the State Constitution, "it necessarily follows" that the representations in the Harris Beach Letter, Mei Letter, and Unauthorized

---

[11]   New York courts also routinely dismiss tort claims that, like those here, are entirely duplicative of, and seek the same relief as, plaintiff's breach of contract claims. *See, e.g., Bd. of Managers of Soundings Condo. v. Foerster*, 138 A.D.3d 160, 164 (1st Dept. 2016) ("A tort claim based upon the same facts underlying a contract claim is properly dismissed as merely a duplication of the contract cause of action."); *Gorman v. Fowkes*, 97 A.D.3d 726, 727 (2d Dept. 2012) ("A cause of action to recover damages for fraud will not lie where the only fraud claimed arises from the breach of a contract."); *Crowley Marine Assocs. v. Nyconn Assocs., L.P.*, 292 A.D.2d 334, 334 (2d Dept. 2002) (dismissing fraud claim as duplicative where it was "essentially one to recover damages for breach of contract"); *see also Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC*, 136 A.D.3d 680, 684 (2d Dept. 2016) (dismissing negligent misrepresentation and fraudulent inducement claims where plaintiffs failed to allege a breach of any duty independent from alleged contractual obligations).

Amendment "were, and remain, untrue."  Cmplt. ¶¶ 40 (at 14), 40 (at 16), and 39 (at 23).

"Innocent misrepresentation" is an equitable theory that permits New York courts to "rescind a transaction that has been consummated through misrepresentation of a material fact although the misstatement was not intentionally made."  60A N.Y. Jur. 2d Fraud and Deceit § 147 (Rescission); *see also Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995) (noting that New York courts permit rescission of a contract in the event of an innocent misrepresentation of a material fact).  To state an innocent misrepresentation claim, a plaintiff must allege that the representation at issue was both "material" and "justifiably relied on."  *Mackinder v. Schawk, Inc.*, 2005 WL 1832385, at *13 (S.D.N.Y. Aug. 2, 2005) (quotation omitted).  The remedy for innocent misrepresentation is "rescission of the contract, or restitution, but the plaintiff may not recover damages."  *Glob. Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.*, 2007 WL 174094, at *2 (W.D.N.Y. Jan. 22, 2007).[12]

As discussed above, scienter is not the only element of fraud that the Complaint does not sufficiently allege: Phoenix also fails to allege justifiable reliance.  *See* Part III.B.2, *supra*.  Moreover, the Complaint seeks damages, not rescission of the Unauthorized Amendment.  The Complaint therefore fails to state a claim on an innocent misrepresentation theory, and Counts IV, V and X should be dismissed with prejudice for this reason as well.

       3.    <u>The Allegations In The Complaint Do Not State A Claim For Negligent Misrepresentation</u>

To state a claim for negligent misrepresentation, a complaint must allege that: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the

---

[12]  All three innocent misrepresentation counts set forth the amounts of the Loan allegedly due and outstanding, Cmplt. ¶¶ 44 (at 14-15), 44 (at 16-17), 42 (at 23-24), and the Complaint requests an award of money damages only—not rescission of the Unauthorized Amendment, *id.* at 26-27.

defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Morrison v. Hoffmann-La Roche, Inc.*, 2016 WL 5678546, at *9 (E.D.N.Y. Sept. 29, 2016) (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). Phoenix's three negligent misrepresentation claims (Counts VI, VII and XI) should be dismissed for failure to state a claim because the Complaint does not allege the existence of a special relationship between the Town and Phoenix and any reliance by Phoenix on the alleged misrepresentations was unreasonable.

First, liability for negligent misrepresentation is only imposed "on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Id.* (quotation omitted). A special relationship does not arise out of an arm's length business transaction. *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 682 (2d Cir. 2012) (complaint did not plead a "special relationship" where "the relationship between [the parties] was that of a buyer and seller in a standard arm's length transaction"). The Complaint, however, is devoid of any allegation that there was a special relationship between the Town and Phoenix. On the contrary, it alleges that Phoenix and the Town entered into a single agreement, the Unauthorized Amendment, negotiated at arm's length by the parties' counsel. Cmplt. ¶¶ 22-24, 27-28, 36 (at 10). This, alone, is a sufficient basis on which to dismiss Phoenix's negligent misrepresentation claims. *See, e.g., Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x 653, 658 (2d Cir. 2015) (dismissing negligent misrepresentation claim where plaintiff did not allege a special relationship with defendant); *Losquadro v. Gerrard*,

276 A.D.2d 599, 600 (2d Dept. 2000) (dismissing claim where complaint did not allege special relationship).

Second, the Complaint does not "emphatically allege" justifiable reliance. *See IKB Int'l*, 584 F. App'x at 29 (quotation omitted).  Nor can it: each alleged misrepresentation was easily verifiable from information in the public domain. *See* Part III.B.1, *supra*.  It is also well-established that a sophisticated plaintiff like Phoenix "cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *UST Private Equity Inv'rs Fund, Inc. v. Salomon Smith Barney*, 288 A.D.2d 87, 88 (1st Dept. 2001); *see also Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 F. App'x 32, 34 (2d Cir. 2011) (dismissal of negligent misrepresentation claim appropriate where plaintiff made no effort to verify any of defendant's alleged misrepresentations).   Having failed to verify the accuracy of alleged representations concerning the validity and enforceability of the Unauthorized Amendment when negotiating that contract, Phoenix is precluded from bringing negligent misrepresentation claims now.  The Complaint's negligent misrepresentation claims (Counts VI, VII and XI) should be dismissed with prejudice on this basis as well.

### C.    Phoenix's Tort Claims Are Time-Barred

Even if the allegations in the Complaint were sufficient to state any tort claims, such claims must be dismissed because they are time-barred.  Tort claims against municipal entities in New York are subject to the statute of limitations set forth in New York's General Municipal Law so must be commenced "within one year and ninety days after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. Law § 50-i; *see also Campbell v. City of New York*, 4 N.Y.3d 200, 203 (2005) ("This Court has consistently treated the year-and-90-day provision contained in section 50–i as a statute of limitations.").   Claims noticed after the

24

limitations period are time-barred and must be dismissed.  *See, e.g., Porcaro v. Town of Beekman*, 15 A.D.3d 377, 378 (2d Dept. 2005) (affirming dismissal of time-barred tort claim).[13]

Phoenix's tort claims are premised on alleged false statements made *five years* before the Complaint was filed and *four* years before providing notice to the Town of its claims, each one of which could have been discovered to be false immediately with minimal diligence.  *See* Part III.A.1, *supra*.  The limitations period on Phoenix's tort claims has, therefore, long-since expired.[14]  Accordingly, Counts IV through XII are time-barred and should be dismissed with prejudice on that basis too.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed with prejudice.

Dated:  New York, New York
        October 18, 2016

QUINN EMANUEL URQUHART &
    SULLIVAN, LLP

By:     /s/ Jonathan E. Pickhardt
        Jonathan E. Pickhardt
        Rex Lee
        Monica E. Tarazi

        51 Madison Avenue, 22nd Floor
        New York, New York  10010
        (212) 849-7000

        *Attorneys for Town of Oyster Bay*

---

[13]   The statute of limitations for claims sounding in fraud under New York law begins to run "at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence."  *Clarke-St. John v. City of New York*, 2016 WL 4263032, at *4 (Sup. Ct. Kings Cty. Aug. 4, 2016) (citation omitted).  The statute of limitations for negligent misrepresentation claims begins to run "on the date of the alleged misrepresentation which is relied upon by the plaintiff."  *Fandy Corp. v. Lung-Fong Chen*, 262 A.D.2d 352, 353 (2d Dept. 1999).

[14]   The "extraordinary remedy of equitable estoppel" may be invoked under New York law only where a defendant's affirmative wrongdoing "contributed to the delay between accrual of the cause of action and commencement of the legal proceeding."  *See Clark v. Ravikumar*, 90 A.D.3d 971, 972 (2d Dept. 2011); *see also Okie v. Vill. of Hamburg*, 196 A.D.2d 228, 231 (4th Dept. 1994) (the limitations period is not tolled by representations that "later turned out to be incorrect").  Phoenix does not allege that the Town induced it to refrain from filing a timely action before the limitations period ran.