UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PHL VARIABLE INSURANCE COMPANY,

               Plaintiff,

         -against-

TOWN OF OYSTER BAY,

               Defendant.

---

Case No. 16 Civ. 4013 (SJF) (AKT)

 

## TOWN OF OYSTER BAY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND LEAVE TO FILE A SECOND AMENDED COMPLAINT

QUINN EMANUEL URQUHART
 & SULLIVAN LLP
51 Madison Avenue
New York, New York 10010
212-849-7000 (tel)
212-849-7100 (fax)

*Attorneys for Town of Oyster Bay*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT ....................................................................................................................4

I.  RECONSIDERATION IS UNWARRANTED AS TO THE COURT'S
    ORIGINAL DETERMINATION THAT PHL FAILED TO ALLEGE AN
    ENFORCEABLE CONTRACT ............................................................................5

II. RECONSIDERATION IS UNWARRANTED AS TO THE COURT'S
    ORIGINAL DETERMINATION THAT PHL FAILED TO ALLEGE
    RATIFICATION.................................................................................................7

III. RECONSIDERATION OF THE TOWN ATTORNEY'S AUTHORITY WOULD
     NOT LEAD TO A DIFFERENT RESULT............................................................11

IV. PHL'S CLAIMS SHOULD BE DISMISSED ON OTHER GROUNDS ........................13

V.  LEAVE TO AMEND SHOULD BE DENIED .....................................................14

CONCLUSION....................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*In re Adelphia Recovery Trust*,
634 F.3d 678 (2d Cir. 2011)...................................................................... 9

*Chavis v. Chappius*,
618 F.3d 162 (2d Cir. 2010)...................................................................... 6

*Chem. Bank v. Affiliated FM Ins. Co.*,
169 F.3d 121 (2d Cir. 1999)...................................................................... 9

*Gause v. Suffolk Cty.*,
2007 WL 776752 (E.D.N.Y. Mar. 7, 2007) ............................................ 4

*Hunt v. All. N. Am. Gov't Income Trust, Inc.*,
159 F.3d 723 (2d Cir. 1998)...................................................................... 15

*Jackson v. Cty. of Nassau*,
2016 WL 3093897 (E.D.N.Y. June 1, 2016) ........................................... 4

*Janese v. Fay*,
692 F.3d 221 (2d Cir. 2012)...................................................................... 14

*Li v. Borsato*,
2016 WL 7496727 (E.D.N.Y. Dec. 30, 2016) ........................................ 15

*Merrick Gables Ass'n Inc. v. Town of Hempstead*,
691 F. Supp. 2d 355 (E.D.N.Y. 2010) ..................................................... 6

*Plaza Drive Grp. of CNY, LLC v. Town of Sennett*,
115 A.D.3d 1165 (4th Dep't 2014)........................................................... 6

*Ruotolo v. City of N.Y.*,
514 F.3d 184 (2d Cir. 2008)...................................................................... 14

*Schwartz v. HSBC Bank USA, N.A.*,
2017 WL 2634180 (S.D.N.Y. June 19, 2017) ................................. 4, 14, 15

*Sklodowska-Grezak v. Stein*,
2017 WL 685125 (S.D.N.Y. Feb. 21, 2017)............................................. 6

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
921 F.2d 409 (2d Cir. 1990)...................................................................... 15

*Verifacts Grp., Inc. v. Town of Babylon*,
    267 A.D.2d 379 (2d Dep't 1999) ............................................................................... 12

## Statutory Authorities

N.Y. Town Law § 64(6) ............................................................................... 1, 5, 12

## Rules and Regulations

Fed. R. Civ. P. 8 ............................................................................... 1

Fed. R. Civ. P. 15(a) ............................................................................... 15

Fed. R. Civ. P. 59(e) ............................................................................... 4, 14

Fed. R. Civ. P. 60(b) ............................................................................... 14

## Additional Authorities

57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 87 ............................................................................... 9

Defendant Town of Oyster Bay (the "Town") respectfully submits this memorandum of law in opposition to the Motion for Reconsideration and Leave to File a Second Amended Complaint ("Mot.") submitted by plaintiff PHL Variable Insurance Company ("PHL").

## PRELIMINARY STATEMENT

In a 43-page Opinion and Order (the "Order"), the Court dismissed PHL's amended complaint with prejudice on the ground that it failed to state a claim against the Town.  PHL now moves for reconsideration of the dismissal of a subset of its claims, namely its claims for breach of contract, fraud, and innocent misrepresentation, and for leave to replead its contract claims under a theory of ratification.  But, in doing so, PHL does not assert that there was an intervening change of controlling law.  Nor does it contend that the Court made a clear error in applying existing precedent.  And, although it claims to have "newly discovered" evidence, that evidence is not new and, in any event, at most supplements the existing allegations rather than curing any of the fatal deficiencies.  PHL's motion is thus less about raising material issues that the Court may have overlooked than it is about re-litigating the Town's motion to dismiss and hoping to get a second bite at the apple.  PHL's motion should be denied.

*First*, the Court should adhere to its dismissal of the contract claims on the ground that PHL failed to allege contract formation.  On that issue, the Court correctly concluded that PHL failed to state a contract claim because there was no allegation that the Second Amended Concession Agreement (or "SACA") was ever approved by Town Board resolution, as required to create an enforceable municipal contract under Town Law Section 64(6).  PHL's only argument for reconsideration is that the Court overlooked rudimentary pleading standards under Federal Rule of Civil Procedure 8 in declining to infer that the Town Board approved the contract.  Far from supporting reconsideration, this argument merely reflects PHL's disagreement with the Court's failure to infer unstated allegations from its amended complaint.  Moreover, if there were

a Town Board resolution—and there is not—then PHL should present it to the Court rather than ask the Court to infer the existence of one out of thin air.  Because PHL cannot do so—as demonstrated by the fact it does not seek leave to amend to allege the existence of an authorizing resolution—the dismissal of the contract claims was correct the first time.

*Second*, PHL's attempt to re-litigate its 11th hour ratification theory should be rejected.  In opposing the motion to dismiss, PHL argued for the first time that it could pursue its contract claims under the theory that the Town Board subsequently ratified the SACA.  Despite advancing this argument, PHL did not identify a single allegation in the amended complaint to support it.  As a result, the Court properly rejected PHL's argument, finding that the amended complaint did not allege any facts supporting a ratification theory.  PHL now claims that the Court overlooked multiple paragraphs in the amended complaint when rendering its decision.  This argument again amounts to nothing more than a disagreement over how the Court read the pleadings, and it does not warrant reconsideration.  Moreover, PHL is particularly disingenuous in asserting that the Court overlooked certain allegations when PHL could not previously identify a single one itself. In any event, the Court's conclusions were correct because PHL does not allege any fact from which to infer that the Town Board had a clear intent to ratify the contract.

*Third*, PHL argues that the contract, fraud, and innocent misrepresentation claims should be reinstated because the Court made an error related to the Town Attorney's authority to sign the contract.  Here, the Town agrees that a clarification of the Order may be appropriate.  The result, however, remains the same.  In ruling that PHL failed to allege contract formation in support of its contract claims, and justifiable reliance in support of its tort claims, the Court found that the contract was deficient on its face because it was signed by the Town Attorney rather than the Town Supervisor.  As PHL correctly notes, the Town Attorney was authorized by resolution to execute

contracts on behalf of the Town Supervisor under certain circumstances. Yet, this clarification to the Order does not require reconsideration of its result. This is so because, even if the Town Attorney were authorized to sign the SACA (an issue that need not be decided), the Court's dismissal of PHL's claims did not turn on this question. Rather, the Court's dismissal was also based on the independent ground that the SACA was never approved by Town Board resolution, a fact that was equally apparent on the face of the contract and the documents underlying the misrepresentation claims. As a result, PHL still has failed to allege contract formation and justifiable reliance, and the Court should adhere to its dismissal of these claims.

*Finally*, PHL's motion for leave to amend its contract claims should be denied. As an initial matter, the Court need not reach this issue unless it first decides to vacate the original ruling. Because the original ruling should stand, PHL's motion to amend is moot. In any event, the proposed amendment is futile. In seeking leave to amend, PHL asserts that two "newly discovered" Town Board resolutions from April 2014 support repleading the contract claims under a theory of ratification. Yet, neither of these resolutions cures the deficiencies in PHL's original theory. One of the resolutions does not even concern the Concession Agreement underlying the SACA. The second merely shows the Town Board's recognition that "SRB," the borrower under PHL's loan, made capital improvements to the Golf Course Facilities as it was required to do under the Concession Agreement. The resolution does not mention PHL, the SACA, or any loan that SRB might have obtained. Moreover, the resolution recites the Town Board's approval of the Concession Agreement and each of its amendments, notably omitting any reference to the SACA. As a result, rather than show that the Town Board had a clear intent to ratify the SACA, the resolution actually refutes that inference and further confirms that the Town Board never approved the SACA at the outset. This resolution also can hardly be considered "newly discovered" because

it was publicly reported on and disclosed no later than October 2015, long before PHL filed its original complaint in July 2016.

Accordingly, PHL's motion for reconsideration and leave to amend should be denied, and the Court should adhere to its original decision on the Town's motion to dismiss.

## ARGUMENT

"It is within the sound discretion of the district court whether or not to grant a motion for reconsideration." *Jackson v. Cty. of Nassau*, 2016 WL 3093897, at *1 (E.D.N.Y. June 1, 2016) (Feuerstein, J.).  In ruling on a motion for reconsideration, a court should consider: "(1) whether there has been an intervening change of controlling law; (2) whether there is new evidence presented that was not previously available on the original motion; and (3) whether there is a need to correct a clear error or prevent manifest injustice." *Id.* (internal quotation marks omitted).  This means that the moving party generally must "point to … matters … that might reasonably be expected to alter the conclusion reached by the court." *Id.*  The standard is "demanding," and should be "strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Gause v. Suffolk Cty.*, 2007 WL 776752, at *1 (E.D.N.Y. Mar. 7, 2007) (Feuerstein, J.) (internal quotation marks omitted).

A motion to alter or amend a judgment under Rule 59(e) is "assessed under the same standard." *Schwartz v. HSBC Bank USA, N.A.*, 2017 WL 2634180, at *2 (S.D.N.Y. June 19, 2017). The rules governing motions to amend a judgment and for reconsideration are meant to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Id.* (internal quotation marks omitted). Here, PHL's motion falls far short of these standards and should be denied.

I.    **RECONSIDERATION IS UNWARRANTED AS TO THE COURT'S ORIGINAL DETERMINATION THAT PHL FAILED TO ALLEGE AN ENFORCEABLE CONTRACT**

In dismissing the contract claims with prejudice, the Court correctly concluded that PHL's amended complaint failed to allege a threshold element of its claims, namely that "a valid and binding contract existed between SRB Convention and the Town that was intended for [PHL's] benefit." Order at 23. Among other grounds, the Court found specifically that PHL did not allege a single fact showing that the contract was approved by the Town Supervisor or that "the Town Board ever passed a Town Resolution approving the SACA," as required to create an enforceable municipal contract under Town Law Section 64(6). *Id.* at 24.

PHL asks the Court to reconsider the dismissal of its breach of contract claims on this ground but it does not contend that its amended complaint contained allegations showing that the Town Board authorized the contract. Nor does PHL assert that a Town Board resolution approving the contract actually exists, or that it could allege the existence of one if it were to replead. Rather, the entirety of its argument is that, even though there is no basis for PHL to allege that the Town Board ever approved the contract—which it did not—the Court should nonetheless "infer" that it did. Mot. at 14. As an initial matter, this argument does not provide a basis for reconsideration; it is simply an attempt to re-litigate the legal sufficiency of the amended complaint's allegations, an issue the Court has already decided. As a result, PHL's motion for reconsideration as to contract formation should be denied for this reason alone.

Even if the Court were to reconsider the issue, it should adhere to its original ruling that the contract is unenforceable. The thrust of PHL's reconsideration argument is that the Court "overlooked" elementary pleading standards when it declined to infer for PHL's benefit that the Town Board considered and approved the contract. *Id.* at 13-14. According to PHL, it alleged that (i) it wanted assurance as to the validity of the contract and (ii) it funded the loan. *See id.* at

5

15.  Even though these allegations have nothing to do with the Town Board, PHL asserts that the Federal Rules required the Court to assume from them that the Town Board was apprised of the contract, deliberated on it, and issued a public resolution approving it.  *See id*.  Setting aside the substantial leap in logic that PHL asks the Court to make, its argument invites the question why such an inference is even necessary.  If there were a resolution, then PHL could have simply alleged it earlier (or sought to re-plead to allege it now).  That PHL did not do so means only one thing—no such resolution exists.  Thus, what PHL is really asking the Court to do is "infer" a fact that it knows is not true.

Neither the Federal Rules nor *Iqbal* and its progeny come close to supporting this result. *See Sklodowska-Grezak v. Stein*, 2017 WL 685125, at *1 (S.D.N.Y. Feb. 21, 2017) ("[A]lthough the Court is 'obligated to draw the most favorable inferences' that the complaint supports, it 'cannot invent factual allegations that [the plaintiff] has not pled.'") (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  And, as the Court correctly considered before, New York courts routinely dismiss claims like PHL's at the pleading stage, rather than "infer" Town Law compliance, where town board approval was a required element of the claim but was not alleged. *See* Order at 23 (citing *Merrick Gables Ass'n Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355 (E.D.N.Y. 2010), and *Plaza Drive Grp. of CNY, LLC v. Town of Sennett*, 115 A.D.3d 1165 (4th Dep't 2014)); *see also* Reply Br. [Dkt. No. 19] at 7-8 (citing cases).

Any inference that a Town Board resolution exists would also be inconsistent with PHL's purportedly "new" evidence.  In support of its request to amend the complaint a second time, PHL points to two Town Board resolutions from April 2014 as "newly discovered" evidence supporting a theory that the Town Board ratified the SACA years after the fact.  As an initial matter, a theory of ratification is inconsistent with PHL's claim that a valid contract was formed in the first place

because there would have been no need for the Town Board to ratify a contract that was validly authorized from the outset.  In any event, one of these resolutions (Exhibit 9 to PHL's motion) is irrelevant because it concerns a different concession arrangement with SRB than the one underlying the SACA.  The other resolution (Exhibit 8 to PHL's motion) concerned an additional 20-year extension of the Concession Agreement.  As discussed below, this resolution does not support an inference that the Town Board ratified the SACA.  *See infra*, § II.

Indeed, if anything, that resolution further shows that PHL cannot plausibly allege that the Town Board authorized the SACA at the start.  Notably, the resolution details the authorization of the original Concession Agreement (by Resolution No. 638-2000) and its amendments (by Resolution Nos. 313-2005 and 889-2008) but conspicuously omits mention of the SACA or any resolution or approval relating to the SACA or PHL's loan to SRB.  *See* Mot., Ex. 8; *see* Order at 2-7 (summarizing PHL's allegations as to approval history of the Concession Agreement leading up to the SACA).  This, if anything, confirms that every authorized agreement relating to the Golf Course Facilities concession was publicly presented to and approved by the Town Board, but the SACA was not.  Contrary to PHL's arguments, the only reasonable inference to draw from this is that the SACA was never authorized by the Town Board as required by Town Law to create an enforceable contract.  As a result, the Court should adhere to its dismissal with prejudice of PHL's contract claims.

## II.   RECONSIDERATION IS UNWARRANTED AS TO THE COURT'S ORIGINAL DETERMINATION THAT PHL FAILED TO ALLEGE RATIFICATION

PHL next seeks reconsideration of the Court's dismissal of the breach of contract claims on the basis that the amended complaint did not contain "any factual allegations from which [a ratification] claim may reasonably be inferred."  Order at 25 n.9; *see* Mot. at 15-16.  The ratification theory was raised by PHL for the first time in a single paragraph to its opposition to

the motion to dismiss. *See* MTD Opp. [Dkt. No. 17] 11. There, PHL argued that it was entitled to pursue a ratification theory but it did not cite to any allegation in the amended complaint to support that claim. Indeed, the word "ratification" appears nowhere in the amended complaint. *See* Am. Compl. [Dkt. No. 4]. Despite this, PHL now asserts that the Court "overlooked multiple paragraphs" of the amended complaint when finding that PHL had not properly pleaded ratification. Mot. at 15.

As before, PHL seeks only to re-package an issue the Court fully considered the first time. At the outset, PHL's argument that the Court "overlooked multiple paragraphs" in the amended complaint is refuted by the fact that, when opposing the motion to dismiss, PHL could not identify a single allegation in its amended complaint in support of its ratification theory. Having been incapable itself of pointing to any allegations before, it is disingenuous for PHL to assert that the Court "overlooked" anything in rendering its original ruling. Moreover, although PHL now points to certain allegations in claiming that it alleged ratification, these allegations were already before the Court because they were in PHL's operative pleadings. At most, PHL's argument amounts to its disagreement with how the Court read its amended complaint, not to a showing that there was a clear or fundamental error in the ruling. As a result, the Court need not reconsider the ratification theory, and PHL's motion as to this issue should be denied.

Yet, even if the Court were to reconsider this issue, it should again adhere to its original ruling. In arguing that the amended complaint supports a theory of ratification, PHL now relies on five allegations. *See* Mot. at 15-16 (referring to paragraphs 25, 27, 29, 35 (at p. 11), and 35 (at p. 12) of the amended complaint). One of these allegations (paragraph 29) refers only to the fact that PHL agreed to loan money to SRB; it says nothing about the Town or the Town Board. *See* Am. Compl. ¶ 29 ("As a result of the successful conclusion of those negotiations, NDH/PHL

8

agreed to provide financing to SRB ….").  The remaining four paragraphs allege that the Town received certain benefits from the improvements to the facilities that SRB was contractually obligated to make pursuant to the validly authorized Concession Agreement and amendments; none of the allegations relate to the Town Board's purported knowledge and acceptance of the SACA.  *See id.* at ¶ 25, 27, 35 (at p. 11), and 35 (at p. 12).

These are not "factual allegations from which [a ratification] claim may reasonably be inferred."  Order at 25 n.9.  As fully briefed on the motion to dismiss, "[r]atification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding."  *In re Adelphia Recovery Trust*, 634 F.3d 678, 691 (2d Cir. 2011) (quoting 57 N.Y. JUR. 2D ESTOPPEL, RATIFICATION, AND WAIVER § 87) (internal quotation marks omitted); *see* Reply Br. [Dkt. No. 19] at 8-9 (citing cases, including *Adelphia*).  Moreover, "the intent required for ratification 'must be clearly established and may not be inferred from doubtful or equivocal acts or language.'"  *Adelphia*, 634 F.3d at 693 (quoting *Chem. Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d Cir. 1999)).  Here, the five paragraphs relied on by PHL allege only that PHL loaned money to SRB and that the Town benefitted from improvements that SRB was already obligated to make to the facilities.  They do not relate in any way to the Town Board's knowledge of the SACA or any actions taken in respect of it, and thus provide no basis from which to infer that the Town Board was aware of the SACA, knew the SACA had not been validly formed earlier, and nonetheless manifested an "intent" through words or actions to affirm the contract.  As a result, the Court was correct the first time in finding that there were no allegations supporting a ratification theory.

In addition, to the extent PHL seeks to rely on the April 2014 resolution relating to the Golf Course Facilities as a basis for reconsideration, that resolution is of no help to it.  *See* Mot., Ex. 8.

According to PHL, the resolution is "new" evidence of ratification because there the Town Board recognized that "the concessionaire [SRB] has completed [millions of dollars in] capital improvements, as reviewed by an independent firm ...." *Id.*; *see* Mot. at 17.[1]  But this is not a new allegation because, according to PHL, the amended complaint already alleges that SRB made capital improvements.  Since the resolution is duplicative of PHL's existing allegations, it does nothing to cure the fatal deficiencies in PHL's ratification theory, namely the complete absence of any facts from which to infer that the Town Board intended to adopt the SACA.  Moreover, contrary to PHL's assertion that the resolution was "newly discovered," the resolution was actually available to PHL long before it filed its original complaint because the document was publicly reported on and disclosed no later than October 2015.[2]

If the resolution does anything, it refutes the inference that PHL seeks to make and shows that there was no intent to ratify.  As mentioned above, the resolution makes no mention of the SACA, of PHL, or even of any loan SRB might have incurred to fund improvements.  And, although the resolution refers to SRB's having made capital improvements, these improvements were required pursuant to SRB's contractual obligations that *preexisted* the SACA, which included no terms requiring additional improvements.  This shows that the Town did not knowingly accept

---

[1]  According to PHL, the resolution recognizes that these improvements were made between June 8, 2010, "at earliest," and April 2014.  Mot. at 17.  PHL focuses on June 8, 2010 as the "earliest" date because that is when a Town Board resolution was issued discussing SRB's financing difficulties.  *See id.* at 6-7.  From this, PHL seeks to suggest that there is a link from SRB's financing difficulties (as acknowledged in the 2010 resolution), to the SACA (purportedly agreed to in 2011), to the Town Board's acknowledgment of SRB's capital improvements (in 2014).  This suggestion is incorrect as an initial matter because the 2014 resolution does not state that capital improvements were made only from 2010 to 2014, as PHL claims, but instead references all the capital improvements throughout the life of the original Concession Agreement, which began long before PHL's purported involvement.  *See id.*, Ex. 8.

[2]  *See* Oct. 24, 2015 Newsday Article available at http://www.newsday.com/long-island/nassau/harendra-singh-contracts-extended-by-oyster-bay-town-despite-record-of-late-payments-documents-show-1.11001587 (last accessed July 13, 2017).  This article included a link to the relevant April 2014 resolution, as well as the Concession Agreement and its validly approved amendments.  *See* http://www.newsday.com/long-island/oyster-bay-singh-concession-agreements-1.11006576.

any benefit conferred by PHL, much less adopt any agreement with PHL, and that, even with this so-called "new" evidence, PHL still cannot allege a theory of ratification.  The Court should thus adhere to its original ruling.

## III.   RECONSIDERATION OF THE TOWN ATTORNEY'S AUTHORITY WOULD NOT LEAD TO A DIFFERENT RESULT

In addition to dismissing the contract claims on the basis that PHL did not allege a single fact showing that "the Town Board ever passed a Town Resolution approving the SACA," the Court also reasoned that dismissal was appropriate because the contract was signed by Len Genova, the Town Attorney, not John Venditto, the Town Supervisor.  Order at 24.  The Town Attorney's execution of the contract was also one of the independent grounds on which the Court dismissed the fraud and innocent misrepresentation claims.  *See id.* at 32 ("The fact that the SACA was executed by Genova … and not by the Town Supervisor … is readily discernible from the face of that document."); *id.* at 39 (dismissing negligent and innocent misrepresentation for failure to allege justifiable reliance, among other reasons).

Contending that the Court's finding as to the Town Attorney's ability to sign the contract was incorrect, PHL seeks to reinstate the contract, fraud, and innocent misrepresentation claims. It argues that the contract was lawful even though it was executed by the Town Attorney because the Town Board had previously authorized the Town Attorney to sign contracts when the Town Supervisor was "absent or unavailable."  *See* Mot., Ex. 6; *id.* at 11.  To support this argument, PHL references a 2010 Town Board resolution permitting the Town Attorney to perform certain of the Town Supervisor's administrative functions.[3]  *See id.* at 10-11.

PHL's argument falls short.  The Town does not contest that the 2010 resolution permitted

---

[3]  PHL also asserts that the Court ignored principles of judicial restraint by *sua sponte* dismissing the claims on the basis of its finding that the Town Supervisor had not signed the contract.  *See id.* at 9-10.

the Town Attorney to sign contracts if the Town Supervisor was unavailable.  In that respect, it may be appropriate for the Court to clarify that the Town Attorney's execution of a contract would not have automatically rendered the contract invalid.[4]  Nonetheless, the Court should adhere to its original dismissal of PHL's claims because the dismissal did not turn on this issue.  Rather, even if the Court determines that PHL has a basis to plead the Town Attorney's authority to execute the SACA, the outcome of the motion would still be the same and the dismissal of the claims with prejudice would still be warranted.

Starting with the contract claims, the Court's dismissal was not based solely on the Town Attorney's execution of the contract but was also based on the independent ground that PHL did not allege that the Town Board passed a resolution creating an enforceable contract with the Town.  *See* Order at 24.  As the Court explained, Town Law Section 64(6) has two separate requirements: (i) "a formal resolution [is] passed by the Town Board" and (ii) the contract is "executed by the Town Supervisor in the name of the Town."  *Id.* at 22 (quoting *Verifacts Grp., Inc. v. Town of Babylon*, 267 A.D.2d 379, 379 (2d Dep't 1999)) (internal quotation marks omitted).  The arguments made by PHL as to the Town Attorney's authority only go to the latter element.  As a result, regardless of how that issue is resolved at the pleading stage, PHL still cannot satisfy the first element because it cannot allege that the Town Board passed a resolution approving the contract.  *See supra*, § I (showing that there is no basis to infer that a Town Board resolution exists).  Because PHL cannot allege this first threshold element, it cannot allege the existence of an enforceable contract with the Town, and dismissal of the contract claims is still appropriate.

---

[4]  It would not be appropriate, however, to find that the 2010 resolution permitted the Town Attorney to execute the SACA, specifically.  This is so because the resolution does not permit the Town Attorney to sign all Town contracts but only to do so when the Town Supervisor is "absent or unavailable." *See id.* at Ex. 6.  Here, there is no allegation that the Town Supervisor was unavailable.  Moreover, there is no need for the Court to determine whether that fact can be inferred from the pleadings because, as shown here, the dismissal of the claims stands on other, independent grounds.

The result is the same as to the fraud and innocent misrepresentation claims.  The alleged misrepresentations underlying these claims were statements contained in the Harris Beach Letter, the Mei Letter, and the SACA, asserting that the SACA was validly authorized.  In ruling that PHL could not allege justifiable reliance on these statements, the Court relied on two independent findings.  One was that the Town Attorney had signed the contract.  The other was that PHL was "charged with knowledge … that a valid and binding contract required Town Board approval" and that, as a result, it could not rely on the alleged misrepresentations because they "all … omit any reference to a Town Resolution approving the SACA."  Order at 32-33, 34-35.  Thus, even if the Town Attorney were authorized to sign the SACA, PHL still cannot allege Town Board approval.  This means that PHL still cannot allege justifiable reliance, and the dismissal of the fraud and innocent misrepresentation claims is still warranted.

Continued dismissal of the innocent misrepresentation claims is also appropriate for another reason.  As the Court properly determined, PHL cannot state a claim for innocent misrepresentation because the only remedies available for that claim are rescission or reformation and PHL requests neither.  *See* Order at 40 n.17.  This determination was yet another stand-alone basis on which to dismiss the claim, and any reconsideration as to the Town Attorney's authority would not change the outcome.  As a result, the Court should adhere to its original ruling dismissing PHL's claims with prejudice.

## IV.   PHL'S CLAIMS SHOULD BE DISMISSED ON OTHER GROUNDS

Even if the Court were to depart from its original ruling, PHL's claims should still be dismissed for the multitude of reasons that were presented in the Town's motion to dismiss but that were not addressed in the Court's Order.  First, the contract claims should be dismissed because they are based on a contract that is unenforceable under the New York State Constitution.  *See* Order at 26 n.10 (declining to reach the constitutional issue in light of the dismissal based on

Town Law); MTD Br. [Dkt. No. 15] § I.B. (showing that the contract is unenforceable under the State Constitution); Reply Br. [Dkt. No. 19] § I.A. (same).

The fraud and innocent misrepresentation claims, in turn, are time barred and duplicative of the contract claims. *See* Order at 37 n.16 & 43 n.19 (declining to reach these issues in light of dismissal for lack of justifiable reliance); MTD Br. at 21 n.11 (as to duplication); Reply Br. § III.A. (same); MTD Br. § III.C. (as to the claims' untimeliness); Reply Br. at 15 n.13 (same).  The fraud claim should be dismissed for the additional reason that PHL fails to allege fraudulent intent. *See* MTD Br. § III.B. (showing failure to allege intent); Reply Br. § III.B. (same).  Thus, even if the original ruling is altered, the claims should nonetheless be dismissed on multiple grounds.

## V.    LEAVE TO AMEND SHOULD BE DENIED

Finally, PHL seeks leave to amend its complaint a second time to allege a theory of ratification based on the two "newly discovered" resolutions from April 2014.  Mot. at 17.  The Court need not consider this request and should instead deny it as moot.  As the Second Circuit has held, "[a] party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to [Federal Rules] 59(e) or 60(b)." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).  Here, PHL has failed to demonstrate any exceptional circumstance justifying reconsideration, let alone vacatur, of the Court's dismissal of the contract claims, and this failure "dooms" the motion for leave to amend. *Schwartz*, 2017 WL 2634180, at *5.  Because PHL cannot succeed in having the judgment vacated, it is not entitled to replead at this stage of the case.

The motion to amend should also be denied on its merits.  Although the Rule 15 standard for amendment applies to postjudgment motions to amend, "amendment of a complaint becomes significantly more difficult when a plaintiff waits … until after judgment has been entered." *Janese v. Fay*, 692 F.3d 221, 229 (2d Cir. 2012).  When that happens, "a court may exercise its

discretion [to grant leave to amend] more exactingly." *Schwartz*, 2017 WL 2634180, at *5 (quoting *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)) (internal quotation marks omitted).

Even under a less exacting standard, PHL's proposed amendment would be futile. Although the proposed amendment references two resolutions that post-date the SACA, they add nothing new to PHL's already-deficient allegations. As shown earlier, one of the resolutions (Exhibit 9 to PHL's motion) has nothing to do with this case because it relates to a concession deal that did not involve PHL. *See supra*, § I. The other resolution (Exhibit 8 to PHL's motion) only refutes rather than supports a plausible inference of ratification. *See supra*, § II. As a result, PHL's ratification theory is just as deficient with the April 2014 resolutions as it was without them, and would therefore have to be dismissed again. *See Hunt v. All. N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 728 (2d Cir. 1998) ("Although Fed. R. Civ. P. 15(a) provides that the district court should freely grant leave to amend when justice so requires, it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile."); *Li v. Borsato*, 2016 WL 7496727, at *2 (E.D.N.Y. Dec. 30, 2016) ("[The court] need not afford that opportunity [to amend] here where it is clear from plaintiff's submission that any attempt to amend the complaint would be futile."). Moreover, even if PHL could plead facts showing an intent to ratify, any ratification claim would still fail because the contract would still have been illegal under the State Constitution and thus could not have been made enforceable through ratification. *See* Reply Br. [Dkt. No. 19] at 8 (citing cases).

Shifting gears, although PHL does not say so in its motion papers, its proposed amendment also includes a number of other new allegations that are unrelated to the April 2014 resolutions. For the avoidance of doubt, any reliance on these allegations is equally futile. In particular, PHL

15

seeks to include new allegations as to two other resolutions, one from March 2010 and the other from June 2010 (Nos. 256-2010 and 605-2010).  *See* Mot., Ex. 12 at ¶¶ 22-34.  Like the April 2014 resolutions, these 2010 resolutions are not "newly discovered."  The Court already addressed and rejected the inference PHL seeks to draw from the March 2010 resolution, and the June 2010 resolution was publicly disclosed before this lawsuit began.  *See* Order at 24 n.8 (addressing the March 2010 resolution); *see supra*, at 10 n.2 (identifying the website link from which the June 2010 resolution was available).

Moreover, PHL does not contend that the 2010 resolutions reflect the Town Board's approval of the SACA.  To the contrary, in its proposed amendment, PHL concedes that these resolutions, which long pre-date PHL's involvement and do not even mention PHL, concerned different agreements with different lenders and had nothing to do with the SACA.  *See* Mot., Ex. 12 at ¶ 38 ("… like the lenders who had engaged in discussions with [the Town] and SRB earlier in 2010 …"); ¶ 24 (regarding the March 2010 resolution (No. 256-2010), "the Town Board members … had before them … a proposed agreement between [the Town] and SRB; and a proposed [agreement] to be given by [the Town] to the lender"); ¶ 31 (regarding the June 2010 resolution (No. 605-2010), "the Town Board members had before them … an 'Amendment to Concession Agreement' between [the Town] and SRB, one each for the beach and golf course"); ¶ 35 ("Subsequent to June 8, 2010, and in a *further* quest for financing, SRB … entered into negotiations with [the loan broker for PHL].") (emphasis added).  By PHL's own concession, the 2010 resolutions concerned proposed amendments other than the SACA and the new allegations regarding the 2010 resolutions thus do not come close to supporting an inference as to contract formation, much less ratification, and any amended claims based on those theories would thus be futile.  For these reasons, PHL's motion for leave to amend should be denied.

16

## CONCLUSION

PHL's motion for reconsideration and leave to amend should be denied, and the Court should adhere to its original decision on the Town's motion to dismiss.


Dated:  New York, New York
         July 13, 2017

                                   QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP

                            By:     /s/ J. Pickhardt
                                    Jonathan E. Pickhardt
                                    Rex Lee
                                    Monica E. Tarazi

                                    51 Madison Avenue, 22nd Floor
                                    New York, New York  10010
                                    (212) 849-7000

                                    *Attorneys for Town of Oyster Bay*

17