**FILED
CLERK**

4:08 pm, Jan 29, 2018

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PHL VARIABLE INSURANCE COMPANY,

                 Plaintiff,

      -against-                         16-CV-4013 (SJF)(AKT)

TOWN OF OYSTER BAY,                   **OPINION and ORDER**

                 Defendant.
----------------------------------------------------------------------X
FEUERSTEIN, District Judge:

On or about July 19, 2016, plaintiff PHL Variable Insurance Company ("plaintiff" or "PHL"), commenced this action against defendant Town of Oyster Bay ("defendant" or "the Town") pursuant to this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332, asserting claims seeking damages for breach of contract, unjust enrichment, innocent misrepresentation, negligent misrepresentation and fraud.  On July 27, 2016, plaintiff filed an amended complaint, *inter alia*, asserting additional claims against defendant seeking damages for innocent misrepresentation, negligent misrepresentation and fraud.

By opinion and order dated May 30, 2017 ("the May Order"), the Court granted defendant's motion to dismiss plaintiff's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to the extent set forth therein and dismissed plaintiff's claims against defendant in the amended complaint in their entirety with prejudice for failure to state a claim for relief.  Final judgment was entered in favor of defendant in accordance with that order on June 2, 2017.  Pending before the Court is plaintiff's motion (i) pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 of the Local Rules of the

1

United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 6.3"), seeking reconsideration of so much of the May Order as dismissed its breach of contract, fraud and innocent misrepresentation claims against defendant with prejudice; and (ii) seeking relief, presumably pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, from so much of the May Order as found that the amended complaint failed to state a plausible claim for breach of contract under a theory of ratification and leave to file a second amended complaint to replead its breach of contract claims under a theory of ratification based upon newly discovered evidence. For the reasons set forth below, (i) the branches of plaintiff's motion seeking reconsideration of the May Order are granted to the extent set forth herein; (ii) so much of the May Order as (A) found that the amended complaint fails to state a plausible claim that a valid and binding contract existed between SRB Convention and Catering Corp., d/b/a The Woodlands and PassionFish" ("SRB Convention") and the Town that was intended for plaintiff's benefit because the "Amendment to Concession Agreement" (the "Second Amended Concession Agreement" or "SACA"), into which they entered on November 18, 2011, was executed by Leonard Genova ("Genova"), the then-Town Attorney, rather than the Town Supervisor, and (B) dismissed plaintiff's breach of contract, fraud and innocent misrepresentation claims against defendant based upon the finding that Genova lacked authority to execute the SACA, is vacated; (iii) the Court otherwise adheres to its original determination upon reconsideration of the May Order; and (iv) the branch of plaintiff's motion seeking relief, presumably pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, from so much of the May Order as found that the amended complaint fails to state a claim for breach of contract under a theory of ratification, and leave to file a second amended complaint, is denied.

I.  DISCUSSION

    A.  Standard of Review

"Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3." *U.S. v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). In determining a motion for reconsideration, the court should consider: (1) whether there has been "an intervening change of controlling law;" (2) whether there is new evidence presented that was not previously available on the original motion; and (3) whether there is a "need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" *Analytical Surveys*, 684 F.3d at 52 (quotations, alterations and citation omitted). Generally, reconsideration will not be granted where the moving party: (1) seeks to introduce additional facts not in the record on the original motion, *see Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 155 (E.D.N.Y. 2014) ("A party requesting reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use

3

[reconsideration] to advance new facts and theories in response to the court's rulings" (quotations, brackets and citation omitted)); *Redd v. New York State Div. of Parole*, 923 F. Supp. 2d 393, 396 (E.D.N.Y. 2013) (holding that on a motion for reconsideration, the moving party must "demonstrate that any available factual matters . . . were presented to the court on the underlying motion" (quotations and citations omitted)); (2) advances new arguments or issues that could have been raised on the original motion, *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016), *aff'd*, 663 F. App'x 71 (2d Cir. Oct. 17, 2016), *cert. denied*, 137 S. Ct. 1826, 197 L. Ed. 2d 760 (2017) ("A motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made" (quotations and citation omitted)); *Norton*, 47 F. Supp. 3d at 155 ("[A]rguments raised for the first time on reconsideration are not proper grounds for reconsideration"); *Redd*, 923 F. Supp. 2d at 396 ("A motion for reconsideration is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion . . . ." (quotations and citations omitted)); or (3) "seeks solely to relitigate an issue already decided," *Shrader*, 70 F.3d at 257; *see also Analytical Surveys*, 684 F.3d at 52 (holding that reconsideration "is not a vehicle for relitigating old issues . . . ." (quotations and citation omitted)). It is within the sound discretion of the district court whether or not to grant a motion for reconsideration. *See Belfiore v. Procter & Gamble Co.*, 140 F. Supp. 3d 241, 245 (E.D.N.Y. 2015); *In re Citigroup ERISA Litig.*, 112 F. Supp. 3d 156, 158 (S.D.N.Y. 2015).

Since the parties essentially agree that the Court erred in finding that Genova lacked authority to execute the SACA, so much of the May Order as is based upon such finding is

vacated. However, for the reasons set forth below, the Court otherwise adheres to its original determination upon reconsideration of the May Order.

    B.    Breach of Contract Claims

        1.    Existence of a Valid and Binding Contract[1]

Plaintiff contends, *inter alia*, that the Court: (a) overlooked allegations in the amended complaint from which compliance with New York Town Law § 64(6) "should have been inferred[,]" (Plaintiff's Memorandum of Law in Support of Motion for Reconsideration ["Plf. Mem."] at 13); and (b) imposed a heightened pleading standard "beyond what is required by Federal Rule of Civil Procedure 8 and *Twombly/Iqbal*." (*Id.* at 14). In support of its contention that the amended complaint states a plausible claim "for third-party beneficiary rights under a contract, and in particular, 'the existence of a valid and binding contract between other parties[,]'" (*id.* at 13 [quoting May Order at 21]), plaintiff cites to the following paragraphs in the amended complaint, (*see* Plf. Mem. at 13):

> 31.    Additionally, contemporaneously with, and as part of the Loan transaction [between NDH Capital Corporation ("NDH")/PHL and SRB], SRB and [the Town] agreed to amend the *Concession Agreement*. That amendment was effectuated by a certain *Amendment to Concession Agreement* dated as of November 18, 2011 [the SACA], . . . . [The SACA] was executed by Leonard Genova ("Genova") in his capacity as [the Town's] attorney.

---

[1] Since, as set forth above, so much of the May Order as (i) found that the amended complaint failed to state a plausible claim that a valid and binding contract existed between SRB Convention and the Town that was intended for plaintiff's benefit because the SACA was executed by Genova rather than the Town Supervisor, and (ii) dismissed plaintiff's breach of contract, fraud and innocent misrepresentation claims against defendant based upon such finding, is vacated as erroneous, the Court will not address plaintiff's additional arguments in this regard.

> 32. Pursuant to [the SACA], and as described above, [the Town] agreed with SRB that, in the event SRB defaulted on the Loan, the *Concession Agreement* would be deemed terminated without further notice, and [the Town] would remit a "Termination Payment" to PHL. The Termination Payment was defined by [the SACA] to include, *inter alia*, all amounts "due or to become due under the Loan Documents."
>
> 39. PHL is an intended third-party beneficiary of the *Concession Agreement* (as amended).

(Am. Compl., ¶¶ 31, 32 and 39 on p. 11[2]). In addition, plaintiff cites to paragraph thirty-five (35) on page thirteen (13) of the amended complaint, which alleges: "In connection with documentation of the Loan, NDH and PHL conditioned their respective willingness to make and fund the Loan on the provisioning by [the Town's] counsel of a letter substantiating, *inter alia*, the validity and enforceability of [the Town's] obligations to make the Termination Payment or the Cause Termination Payment in accordance with the terms and provisions of [the SACA]." According to plaintiff, "by pleading [the Town's] 'agreement,' and also pleading that PHL required substantiation that the procedural and statutory requirements were met *before* it would fund the loan, . . . it should be inferred that PHL pleaded the statutory requirements *were* met when it *did* fund the loan." (Plf. Mem. at 13-14 (emphasis in original); *see also Id.* at 15 [Here, PHL pleaded that it required substantiation that the procedural prerequisites were met before it would fund the loan, and that it ultimately funded the loan. The logical inference from these allegations is that the procedural prerequisites *were* met." (emphasis in original)]).

Upon reconsideration, the Court adheres to its original determination that there are no allegations in the amended complaint from which it may reasonable be inferred that the SACA

---

[2] As noted in the May Order, after paragraph forty (40) on page eleven (11) of the amended complaint, the paragraph numbers erroneously repeat for each cause of action. Accordingly, the misnumbered paragraphs are cited according to their paragraph number and page number.

was ever ratified by the Town Board, as required by New York Town Law §64(6), and that the amended complaint, thus, fails to state a plausible claim that a valid and binding contract existed between SRB Convention and the Town that was intended for plaintiff's benefit. *See, e.g. Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 363 (E.D.N.Y. 2010) (dismissing the plaintiffs' breach of contract claim because there was no indication, *inter alia*, that the alleged agreement was ever ratified by the Hempstead Town Board); *Plaza Drive Grp. of CNY, LLC v. Town of Sennett*, 115 A.D.3d 1165, 982 N.Y.S.2d 610 (N.Y. App. Div. 2014) (granting judgment in favor of the Town of Sennett declaring that a certain unsigned letter agreement was not a binding contract and was unenforceable against it because the plaintiff had not alleged that the Sennett Town Board considered or approved the letter agreement as required by [N.Y.] Town Law § 64(6) so as to establish a valid contract.) Contrary to plaintiff's contention, there is nothing in any of the above-referenced allegations cited by it even reasonably suggesting that the Town Board was ever apprised of the SACA, much less that it approved the SACA in accordance with New York law.

Moreover, plaintiff's contention, which relies solely upon a few vague allegations in the amended complaint, ignores the documentary evidence attached to the amended complaint, which was properly considered by the Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("For purposes of . . . [Rule 12(b) of the Federal Rules of Civil Procedure], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." (quotations and citation omitted)); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017). Specifically, the Court found, in relevant part, that although the Harris Beach Letter, the Mei Letter and the SACA,

7

(Am. Compl., Exs., F, I and K), all refer to the Town Resolutions approving the prior agreements relating to the SACA, there was no similar indication in those documents, the pleadings or any of the other documents attached to the amended complaint, that the Town Board ever passed a Town Resolution approving the SACA. Indeed, nowhere does plaintiff even allege that the Town Board ever ratified the SACA as required by New York Town Law § 64(6) for a valid and binding contract to exist, *see Granada Bldgs., Inc. v. City of Kingston*, 58 N.Y.2d 705, 708, 458 N.Y.S.2d 906, 444 N.E.2d 1325 (N.Y. 1982) ("Municipal contracts which violate express statutory provisions are invalid[.]"); *Mans Constr. Oversite, Ltd. v. City of Peekskill*, 114 A.D.3d 911, 911-12, 980 N.Y.S.2d 822 (N.Y. App. Div. 2014) ("A municipal contract which does not comply with statutory requirements or local law is invalid and unenforceable[.]" (quotations and citation omitted)); nor has it ever sought leave to amend the amended complaint to assert such an allegation. Accordingly, upon reconsideration of the May Order, the Court adheres to so much of the May Order as dismissed plaintiff's breach of contract claims against defendant in their entirety with prejudice on the basis that the amended complaint fails to state a plausible claim of the existence of a valid and binding contract absent any indication that the SACA was ever ratified by the Town Board as required by New York Town Law § 64(6).

    2.    Ratification

        a.    Allegations in Amended Complaint

Plaintiff contends that in finding that there are no factual allegations in the amended complaint from which a ratification claim could reasonably be inferred, the Court "overlooked multiple paragraphs of the Amended Complaint that both implicitly and explicitly plead that the

8

SACA was ratified by the Town Board through its acceptance of improvements to the [Town's] Facilities utilizing the loan funds[.]" (Plf. Mem. at 15). Plaintiff specifically cites to the following allegations in the amended complaint[3]:

> 25. One of the issues that made it difficult for SRB to obtain financing was the simple fact that it had no collateral to support any potential loan. In particular, SRB obviously did not own the Golf Course or the Facilities, and even *the improvements that SRB intended to make to the Facilities would, once completed and accepted by [the Town], become [the Town's] property*.
>
> 27. *Recognizing that [the Town] was itself benefitting from its relationship with SRB, and that it would also receive the economic benefit derived from the operation of the Facilities and construction of the improvements that SRB was, by virtue of the* Concession Agreement *(as amended), contractually required to make*, SRB, NDH and PHL entered into negotiations with [the Town] to structure a transaction that would assure that PHL would receive significant monies from [the Town] in the event that SRB defaulted in its repayment obligations. These monies would, of course, then be utilized to satisfy the loan made to SRB.
>
> 29. As a result of the successful conclusion of those negotiations, NDH/PHL agreed to provide financing to SRB in the amount of $7,843,138.08, inclusive of interest ("**Loan**").
>
> 35[4]. Substantial improvements have been made to the Facilities, although PHL presently lacks sufficient knowledge to establish the precise dollar value thereof.
>
> 35[5]. [The Town] was unjustly, unfairly and inequitably enriched to the extent PHL's funds were utilized to improve and/or operate the Facilities.

---

[3] Although plaintiff refers to only certain statements made in paragraphs twenty-five (25) and twenty-seven (27) of the amended complaint, the complete allegations are set forth herein and the parts to which plaintiff specifically refers are italicized.

[4] Plaintiff refers to paragraph thirty-five (35) on page eleven (11) of the amended complaint.

[5] Plaintiff refers to paragraph thirty-five (35) on page twelve (12) of the amended complaint.

(Plf. Mem. at 15-16)[6]. According to plaintiff, those allegations "are sufficient for the Court to have drawn the inference that [the Town] received and accepted the improvements made to the Facilities by SRB following receipt of the loan funds . . . [and] that at least some of the loan funds *were* used by SRB, which is enough to defeat a motion to dismiss." (*Id.* at 16) (emphasis in original).

"A contract that is not approved by the relevant municipal or governmental body as required by law, rule, or regulation may be ratified by the municipality or government body by subsequent conduct[.]" *Prudenti v. County of Suffolk*, 142 A.D.3d 1150, 1152-53, 38 N.Y.S.3d 238 (N.Y. App. Div. 2016); *accord East Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 90 A.D.3d 815, 817, 935 N.Y.S.2d 139 (N.Y. App. Div. 2011). However, it cannot reasonably be inferred from any of the above allegations, nor any other allegation in the amended complaint, that the Town Board engaged in any conduct subsequent to the execution of the SACA "with knowledge of its terms [and] in a manner clearly referable to the agreement[,]" *Prudenti*, 142 A.D.3d at 1153, 38 N.Y.S.3d 238; *see generally In re Adelphia Recovery Trust*, 634 F.3d 678, 691 (2d Cir. 2011) ("Ratification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding." (quoting 57 N.Y. Jur.2d *Estoppel, Ratification, and Waiver* § 87 [currently § 94])), or in a manner "inconsistent

---

[6] Since plaintiff did not refer to any specific allegations in the amended complaint in support of its ratification claim in its opposition to defendant's motion to dismiss, its claim that the Court overlooked those allegations is disingenuous, *see SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props., LLC*, 407 F. Supp. 2d 587, 589 (S.D.N.Y. 2006) ("[I]n order for something to have been 'overlooked,' it must have existed and been called to the court's attention when the motion was briefed"), particularly since, with the exception of the conclusory allegation in paragraph thirty-five (35) on page eleven (11) of the amended complaint, which is devoid of any details regarding when the improvements were made; what improvements were made, etc., all of the remaining allegations were specifically referenced in the May Order. (*See* May Order at 7-8, 17-18, 30).

10

with any other supposition than that it intended to adopt and own the act done."[7] *Elia v. Highland Cent. Sch. Dist.*, 78 A.D.3d 1265, 1269-70, 909 N.Y.S.2d 836 (N.Y. App. Div. 2010) (quoting *Seif v. City of Long Beach*, 286 N.Y. 382, 36 N.E.2d 630 (N.Y. 1941)). Accordingly, upon reconsideration of the May Order, the Court adheres to its original determination that the amended complaint fails to plead a plausible claim of breach of contract under a theory of ratification.

b. "Newly Discovered" Evidence

Rule 60(b)(2) of the Federal Rules of Civil Procedure provides, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" "Relief under Rule 60(b) is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Insurance Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (quotations and citation omitted); *accord Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004).

"In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present

---

[7] As indicated in the May Order, pursuant to the SACA, the Town ostensibly "agreed to amend the [First Amended Concession Agreement ('FACA')] to provide for payment of certain amounts under the [FACA] to [plaintiff] *should [SRB Convention] default in its obligations to [plaintiff]*." (Am. Compl., Ex. F at 2) (emphasis added). Plaintiff does not allege that the Town made any such payments, or otherwise performed, in whole or part, under the SACA. Rather, plaintiff alleges that the Town terminated the Concession Agreement, as amended, but "failed and/or refused to remit the Termination Payment to PHL, all in violation of the terms of the Concession Agreement (as amended)." (Am. Compl., ¶ 37 and ¶ 36 at p. 12).

11

evidence that is truly newly discovered or [] could not have been found by due diligence." *Insurance Co.*, 609 F.3d at 131 (quotations, and citation omitted); *see also Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003) ("Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that could not have been discovered earlier and that is relevant to the merits of the litigation.") "To prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that he was justifiably ignorant of the newly discovered evidence despite due diligence." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004).

The purportedly "newly discovered" evidence submitted by plaintiff consists of two (2) resolutions, Resolution No. 253-2014 ("the 2014 Resolution") and Resolution 254-2014, both of which were adopted by the Town Board on April 8, 2014. Initially, Resolution 254-2014 is inapplicable to this action, as it pertains to a concession agreement between the Town and SRB Concession, Inc. "for the operation of a food and beverage concession at TOBAY Beach," (Declaration of Bryan F. Lewis, Esq., in Support of Plaintiff's Motion for Reconsideration ["Lewis Decl."], Ex. 9); not to the Concession Agreement, and subsequent amendments thereto, at issue in this case. Moreover, plaintiff admittedly was in possession of the 2014 Resolution by January 5, 2017, (Plf. Mem. at 17), only one (1) week after defendant filed its fully-briefed motion to dismiss and approximately four (4) months before the Court issued the May Order. Although plaintiff filed a "Notice of Supplemental Authority" on April 20, 2017, almost four (4) months after defendant filed its motion to dismiss, to bring to the Court's attention a recently decided state court case that it believed was relevant to this case, (*see* Docket Entry 20), it did not similarly seek to bring the 2014 Resolution to the Court's attention, or to file a second amended

complaint based upon the 2014 Resolution, at any time before the Court determined defendant's motion to dismiss. Since plaintiff provides no explanation for its failure to submit the 2014 Resolution at a time when the Court was considering defendant's motion to dismiss, it failed to demonstrate that it was justifiably ignorant of the 2014 Resolution despite due diligence. *See, e.g. State St.*, 374 F.3d at 178.

In any event, even if the 2014 Resolution had been deemed to be newly discovered evidence, it would not have resulted in a different outcome with respect to plaintiff's ratification claims. *See, e.g. Boule*, 328 F.3d at 95; *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995). The 2014 Resolution (i) references (A) Resolution No. 638-2000, which approved the Concession Agreement, (B) Resolution No. 313-2005, which approved the FACA, *inter alia*, accepting the capital improvements performed by SRB Convention in the amount of four million six hundred thousand dollars ($4,600,000.00) and providing for future capital improvements to be made, and (C) Resolution No. 889-2008, which approved the Extension Agreement indicating, *inter alia*, that SRB Convention made additional capital improvements in the amount of three hundred fifty-nine thousand one hundred sixty-seven dollars and eleven cents ($359,167.11) and proposed making an additional three million two hundred fifty thousand dollars ($3,250,000.00) in capital improvements by December 31, 2011[8]; (ii) indicates (A) that

---

[8] On June 8, 2010, the Town Board adopted Resolution 605-2010 indicating, *inter alia*, that it was "necessary to further amend the [Concession Agreement, as amended by the FACA and Extension Agreement], in order to facilitate [SRB Convention's] ability to obtain financing to make capital improvements to the [Golf Course Facility];" and authorizing and directing the Town Supervisor "to execute amendments to the above referenced agreements with SRB Convention . . . as well as any other documents necessary to effectuate the purposes of this Resolution." (Plf. Ex. 11). However, there is no indication in any of the documents submitted by plaintiff suggesting that the Town Board ever approved, or had knowledge of, any subsequent amendment.

13

SRB Convention had completed the eight million two hundred thousand dollars ($8,200,000.00) in capital improvements required thereunder, and proposed to make an additional three million nine hundred thousand dollars ($3,900,000.00) in capital improvements, (B) that "the capital improvements would enhance the Golf Course facility and greatly benefit the residents of the Town[,]" and (C) that "in light of the financial obligations [SRB Convention] would incur in performing the capital improvements, [SRB Convention] has requested that the agreement [which was adopted by the three (3) resolutions set forth therein, *i.e.*, the Concession Agreement, as amended by the FACA and Extension Agreement,] be extended[;]" (iii) authorized and directed the Town Supervisor "to execute an amendment to the abovementioned agreement, requiring [SRB Convention] to make an additional $3,900,000 in capital improvements to the Golf Course facility, for a total in excess of $12,100,000 in capital improvements, and granting a twenty (20) year extension of said agreement;" and (iv) accepted the improvements made by SRB Convention to the date thereof. (Lewis Decl., Ex. 8). There is no reference to the SACA in the 2014 Resolution, nor any basis to infer therefrom that the Town Board had any knowledge of the existence or terms of the SACA. Accordingly, the branch of plaintiff's motion seeking relief from so much of the May Order as found that plaintiff failed to plead a plausible claim of breach of contract under a theory of ratification, and leave to file a second amended complaint to assert such a claim, is denied.

    C.    Fraud and Innocent Misrepresentation Claims

As set forth above, so much of the May Order as found that the amended complaint failed to state plausible fraud and innocent misrepresentation claims because the SACA was executed

14

by Genova rather than the Town Supervisor, and dismissed those claims against defendant based upon such finding, is vacated. Nonetheless, upon reconsideration, the Court adheres to its original determination to dismiss plaintiff's fraud and innocent misrepresentation claims for failure to state a claim for relief on the basis that the amended complaint is devoid of any factual allegations from which it may reasonably be inferred that plaintiff justifiably relied upon the purported misrepresentations in the Harris Beach Letter, the Mei Letter and the SACA relating to the validity and enforceability of the SACA since, *inter alia*, those documents all reference the Town Resolutions approving the prior agreements relating to the SACA, yet omit any reference to a Town Resolution approving the SACA. Since the requirements of the New York Town Law § 64(6) are a matter of public record, plaintiff is charged with knowledge of the fact that a valid and binding contract required Town Board approval; and since it is clear that unlike the three (3) prior agreements relating to the SACA, no reference was ever made to any Town Resolution approving the SACA, plaintiff, which, at all times, was represented by counsel in connection with the transactions at issue, could not have reasonably relied upon the purported misrepresentations in the Harris Beach Letter, Mei Letter and the SACA. *See, e.g. Merrick Gables*, 691 F. Supp. 2d at 363 (dismissing fraud claim on the basis that it was not reasonable for the plaintiff to rely upon the town's alleged representation that it would act in a manner proscribed by federal law); *Michael R. Gianatasio, PE, P.C. v. City of New York*, 53 Misc.3d 757, 775 (N.Y. Sup. Ct. 2016) (dismissing the plaintiff's fraud claim because, *inter alia*, it "could have, and should have, been aware of the law requiring the job to be bid-out and could not justifiably rely on [the defendant's] invitation to work on a no-bid contract.") Accordingly, upon reconsideration of the May Order, so much of the May Order as found that the amended

complaint failed to state plausible fraud and innocent misrepresentation claims because the SACA was executed by Genova rather than the Town Supervisor, and dismissed those claims against defendant based upon such finding, is vacated, but the Court otherwise adheres to its original determination to dismiss plaintiff's fraud and innocent misrepresentation claims in their entirety with prejudice for failure to state a claim for relief.[9]

II.  CONCLUSION

For the reasons set forth above, (i) the branches of plaintiff's motion seeking reconsideration of the May Order are granted to the extent set forth herein; (ii) so much of the May Order as (A) found that the amended complaint fails to state a plausible claim that a valid and binding contract existed between SRB Convention and the Town that was intended for plaintiff's benefit because the SACA was executed by Genova, rather than the Town Supervisor, and (B) dismissed plaintiff's breach of contract, fraud and innocent misrepresentation claims against defendant based upon the finding that Genova lacked authority to execute the SACA, is vacated; (iii) the Court otherwise adheres to its original determination upon reconsideration of the May Order; and (iv) the branch of plaintiff's motion seeking relief, presumably pursuant to

---

[9] The Court also adheres to its original determination that the amended complaint fails to state a plausible claim for innocent misrepresentation since the only relief sought in the amended complaint for the alleged misrepresentations, exclusive of interest and costs, is damages, (*see* Am. Compl., ¶¶ 43 at pp. 14 and 16; ¶ 41 at 23; and "Wherefore" Clause at 26), not rescission or reformation of the SACA. *See Sheridan Drive-In, Inc. v. State*, 16 A.D.2d 400, 407, 228 N.Y.S.2d 576 (N.Y. App. Div. 1962) ("[W]hile innocent misrepresentations are sufficient for rescission they cannot be the basis of a recovery of damages for fraud[.]"); *Lassiter v. Rellstab Assocs.*, 1 A.D.2d 672, 146 N.Y.S.2d 263 (N.Y. App. Div. 1955) (dismissing innocent misrepresentation claims on the grounds that the complaint did not seek "relief by way of reformation or rescission," but instead, "attempt[ed] to plead a cause of action to recover damages caused by innocent misrepresentations of fact," which action "does not lie.")

16

Rule 60(b)(2) of the Federal Rules of Civil Procedure, from so much of the May Order as found that the amended complaint fails to state a claim for breach of contract under a theory of ratification, and leave to file a second amended complaint, is denied.

SO ORDERED.

                                                                                               /s/
                                                                  Sandra J. Feuerstein
                                                                  United States District Judge

Dated: January 29, 2018
       Central Islip, New York